## EX PARTE J. J. BROUSSARD.

### No. 2759.   Decided December 3, 1913.

### Rehearing denied April 1, 1914.

**1.—City Charter and Ordinance—Constitutional Law.**

An ordinance of the City of Beaumont making it unlawful for any person, corporation or association of persons to establish or maintain any slaughter house, bone-boiler or soap-making establishment in the City of Beaumont, or any brickyard, livery stable, horse lots and stock pens within a distance of three hundred feet of any hotel or private residence in the City of Beaumont, without first obtaining a permit from the city council, is constitutional. Davidson, Judge, dissenting.

**2.—Same—Stock Pen—Number of Cattle.**

Other provisions of said ordinance providing that the term "stock pen," as used therein, should include any lot wherein more than six head of cattle were kept and fixing a penalty thereon is also constitutional. Davidson, Judge, dissenting.

**3.—Same—Fourteenth Amendment.**

Said ordinance is not violative of the Fourteenth Amendment of the Constitution of the United States, nor any other provision thereof. Following Fischer v. St. Louis, 194 U. S., 361.

**4.—Same—City Council—Arbitrary Action—Presumption.**

That the city council may act arbitrarily under the authority granted does not render the ordinance void. The presumption of law is that the council will act within the spirit and the intention of the law in such manner as they deem necessary for the public health and welfare of the city. If they do act arbitrarily, such action can be revised by the proper tribunal.

**5.—Same—Discretion of City Council.**

It is a discretion confided that must be exercised in the interest of the public welfare, public health and the public peace, and if the facts should show that in the refusal of the permit or license no such incentives or purposes were behind the action of the council, then in an application for a writ of mandamus made to the proper tribunal, the council would be compelled to issue the license; but this is a matter for the civil courts.

**6.—Same—Constitutional Law—Number of Cattle.**

An ordinance requiring that a person desiring to keep more than six head of cattle within one enclosure within the limits of the city must obtain a permit to do so from the city council is not void, and is not violative of any provisions of the Constitution of Texas nor of the United States; and if said council should seek to exercise this power in an arbitrary and unreasonable manner, a writ of mandamus would lie, which is a civil and not a criminal proceeding.

**7.—Same—Mandamus—License.**

A mandamus will not lie to review the case and compel the grant of a license unless it shall appear that such discretion has been abused, or exercised in an arbitrary and unlawful manner.

**8.—Same—Reasonable Regulation—Police Power.**

Regulations for the care and keeping of live stock in cities is necessary for the health and welfare of the citizens, and when they are to be kept in numbers in excess of six head, the power to issue permits to do so must be placed somewhere, and we see no reason why the city council is not a proper tribunal to be invested with the exercise of this power. Davidson, Judge, dissenting.

**9.—Same—Sanitary and Health Regulations.**

The reason why the power to enact sanitary and health regulations is always conferred upon cities and municipalities is that they best know their conditions and needs, and what regulations will best subserve the health of its citizens, and when an ordinance is passed with this end in view, it must be clearly violative of some provisions of the Constitution before the courts will nullify it.

**10.—Same—Extent of Power—City Council.**

Where the city council is dealing with a subject which is in the interest of public health, it may, if it is deemed proper, absolutely prohibit, unless permission is granted by the council, and reserved to itself the right to say whether or not a permit shall be granted.

**11.—Same—Case Stated—Habeas Corpus—Stock Pen.**

Where the pleadings and the facts are not sufficiently developed for this court to determine whether or not the council in this instance has or has not acted arbitrarily in refusing relator permission to keep more than six head of cattle, and he has not been tried for the offense, but sues out a write of habeas corpus alleging that the ordinance on its face is unconstitutional, he must be remanded to custody. Davidson, Judge, dissenting.

Appeal from the District Court of Jefferson. Tried below before the Hon. W. H. Davidson, who refused to discharge relator on the ground that the city ordinance was unconstitutional.

The opinion states the case.

*Dougherty & Gordon* and *W. F. Ramsey* and *C. L. Black,* for relator. —Cited cases in dissenting opinion.

*C. E. Lane,* Assistant Attorney General, and *A. Ludlow Calhoun,* City Attorney.—Cited cases in majority opinion.

HARPER, JUDGE.—The city council of the City of Beaumont passed the following ordinance:

"Article 991. It shall be unlawful hereafter for any person, corporation or association of persons to establish or maintain any slaughter house, bone boiler or soap making establishment, in the City of Beaumont, or any brick yards, livery stable, horse lots and stock pens, within a distance of 300 feet of any hotel or private residence in the City of Beaumont, without first obtaining a permit from the city council."

Other provisions of the ordinance provided that the term "stock pen" as used in the ordinance should include any lot wherein more than six

head of cattle were kept, and the penalty fixed thereto was by fine not less than $25 nor more than $100.

Appellant was arrested charged with a violation of this ordinance, in that he maintained a stock pen containing more than six head of cows on lots 3 to 6, in block 2, in Blanchette Second Addition to the City of Beaumont, without having obtained a license or permit from the city council.

There is no claim that the complaint is not a valid one, if the ordinance is valid. When appellant was arrested on the complaint he sued out a writ of habeas corpus before Hon. W. H. Davidson, Judge of the Fifty-eighth District Court, who granted the writ and set the cause down for hearing. When heard the court held the ordinance valid and remanded the relator to custody, from which judgment and order he prosecutes this appeal, assigning the following errors: That the court erred in holding the ordinance valid for these reasons:

1. That the ordinance is not fair, impartial and uniform. 2. That the ordinance delegates to the city council despotic and arbitrary power. 3. That said ordinance is in contravention of section 28 of article 1 of the Constitution of this State. 4. That said ordinance is in contravention of section 19 of article 1 of the Constitution of this State. 5. That said ordinance contravenes section 1 of the Fourteenth Amendment to the Constitution of the United States.

Relator's counsel have filed a very able brief in which they take up and discuss all of these assignments. That the ordinance is not violative of the Fourteenth Amendment to the Constitution of the United States, nor any other provision thereof, has been specifically held by the United States Supreme Court in the case of Fischer v. St. Louis, 194 U. S., 361 (48th Law. Ed., 1019). In that case they passed an ordinance which reads as follows: "No. dairy or cow stable shall hereafter be erected, built or established within the limits of this city without first having obtained permission so to do from the municipal assembly." This ordinance was assailed upon every ground upon which relator assails this ordinance. The Supreme Court upheld the ordinance, saying:

"Defendant's main contention, however, is that, by vesting in the municipal assembly the power to permit the erection of dairy and cow stables to certain persons, a discrimination is thus declared in favor of such person, and against all other persons, and the equal protection of the laws denied to all the disfavored class. The power of the Legislature to authorize its municipalities to regulate and suppress all such places or occupations as, in its judgment, are likely to be injurious to the health of its inhabitants, or to disturb people living in the immediate neighborhood by loud noises or offensive odors, is so clearly within the police power as to be no longer open to question. The keeping of swine and cattle within the city or designated limits of the city has been declared in a number of cases to be within the police power. The keeping of cow stables and dairies is not only likely to be offensive to neighbors, but it is too often made an excuse for the supply of impure

milk from cows which are fed upon unhealthful food, such as the refuse from distilleries, etc. Re Linehan, 72 Cal., 114, 13 Pac., 170; Quincy v. Kennard, 151 Mass., 563, 24 N. E., 860; Love v. Recorder's Court Judge, 128 Mich., 545, 55 L. R. A., 618, 87 N. W., 785.

"We do not regard the fact that permission to keep cattle may be granted by the municipal assembly as impairing, in any degree, the validity of the ordinance, or as denying to the disfavored dairy keepers the equal protection of the laws. Such discrimination might well be made where one person desired to keep two cows, and another fifty; where one desired to establish a stable in the heart of the city, and another in the suburbs; or, where one was known to keep his stable in a filthy condition, and another had established a reputation for good order and cleanliness. Such distinctions are constantly made the basis for licensing one person to sell intoxicating liquors, and denying it to others. The question in each case is whether the establishing of a dairy and cow stable is likely, in the hands of the applicant, to be a nuisance or not to the neighborhood, and to imperil or conduce to the health of its customers. As the dispensing power must be vested in some one, it is not easy to see why it may not properly be delegated to the municipal assembly which enacted the ordinance. Of course, cases may be imagined where the power to issue permits may be abused, and the permission accorded to social or political favorites and denied to others, who, for reasons totally disconnected with the merits of the case, are distasteful to the licensing power."

This so clearly expresses the rule of law applicable to this case, we adopt the language there used.

That the council *may act arbitrarily* under the authority there granted does not render the ordinance void. The presumption of law is that the council will act within the spirit and intent of the law,—that is, in such manner as they deem necessary for the public health and welfare of the city. If they do act *arbitrarily* in the premises this would not in and of itself render the ordinance void, but such action would be revised and controlled by the proper tribunal. As said by some of the courts, the practice of nearly a century that there is little to fear from an abuse of this power. In the government of affairs of a municipality many powers must necessarily be confided to the jurisdiction of its officers, and it can be productive only of mischief in the treatment of such questions to substitute the discretion of strangers in place of that of the officers best acquainted with the circumstances, conditions and necessities of the case. That the law furnishes ample remedies for the abuse of such discretion, when the action taken is but an arbitrary exercise of power, can hardly be questioned. It is a discretion confided that must be exercised in the interest of the public welfare, in the interest of the public health, and the public peace, and if the facts should show that in the refusal of the permit or license no such incentives or purposes were behind the action of the council, then in application for a writ of mandamus made to the proper tribunal, the council would be compelled to issue the license or permit. The facts as agreed to in this

case, while not full and complete, might indicate, as contended by re-
lator, that perhaps the council acted rather arbitrarily in this instance,
but from such action we could give no relief—that would be the office
of the civil court in an action for a writ of mandamus to compel the
issuance of the license to the relator.   However, upon a full develop-
ment of all the facts it may be that the council acted properly, and the
refusal of the license was necessary for the preservation of the health
and welfare of the city.   It is not disclosed by the application nor the
evidence how many cattle the relator desired to keep within the city
limits.   If he desired to keep on the lots mentioned a herd of cattle
for barter and sale, and such lots were near to and adjacent to the
resident portions of the city, the city council would and did act properly
in refusing him a permit to keep cattle within such territory.   At least,
we hold that the ordinance in requiring that a person desiring to keep
more than six head of cattle within one enclosure within the limits of
the city to obtain a permit to do so from the city council is not void, ·
and is violative of no provision of the Constitution of this State or the
United States, for if the council should seek to exercise this power in
an arbitrary and unreasonable manner, its power can and will be con-
trolled by the courts, and by a writ of mandamus any injustice can and
will be prevented, should the officers so far forget their official oath and
duties as not to administer it in a fair, impartial way as applicable to
all citizens.   As to the facts necessary, or the rules governing the writ
of mandamus, it is not necessary nor proper for us here to discuss, as
it is a civil and not a criminal proceeding.   However, we will state the
general rule seems to be as stated in Cyc., vol. 23, p. 137:   "Where
a court or board of officers invested with a discretion as to the grant
or refusal of a license, and where in the exercise of such discretion it
has examined and rejected a particular application for license, man-
damus will not lie to review the case and compel the grant of a license
unless it shall appear that such discretion has been abused or exercised
in an arbitrary and unlawful manner.   But if a license has been refused
to a properly qualified person, without any reason whatever, or without
any reason which is valid and sufficient in law, but in an arbitrary and
capricious exercise of the power vested in the licensing authorities, re-
dress may be had by mandamus.   In re Sparrow (Pa.), 20 Atl. Rep.,
692, 127 Pa., 523; People v. New York, 18 N. Y. Supp., 621; State v.
Baker, 32 Mo. App., 98; State v. New Orleans, 36 So. Rep., 999;
George v. Winchester (Ky.), 80 S. W. Rep., 1158; Zanone v. Mound
City, 103 Ill., 552; State v. Jefferson County Comm., 20 Fla., 425."
In our own State the Supreme Court holds the rule as above stated to
be correct.   In the case of Sanson v. Mercer, 68 Texas, 488, Judge
Gaines, in speaking for the court, holds:   "Where it is apparent that
the refusal of an officer to perform an official act, which prima facie
involves judgment and discretion in regard to the existence or non-
existence of the conditions which would require its performance, is
arbitrary, and not because of any doubt or conviction regarding his

duty, and there is no controversy as to the existence of the facts which would make his action ministerial purely, mandamus will lie."

So in this case, if the action of the city council in refusing to grant relator a permit was but the arbitrary exercise of a power conferred on them, mandamus will lie to compel the issuance of a permit to him. Regulations for the care and keeping of stock in cities is necessary for the health and welfare of the citizens, and when they are to be kept in numbers in excess of six head, the power to issue permits to do so must be placed somewhere, and we see no reason why the city council is not a proper tribunal to invest with the exercise of this power. They are the law-making body of the city, and would have the authority to keep too many pens of this character located near each other; would have the right to prohibit the keeping of large herds in the city limits altogether, and have the authority to place all reasonable rules and regulations around the keeping of stock in the city as may be necessary for the public health. In placing this discretionary power, as to the issuance of permits for keeping stock in pens in quantities of six head and more, in the city council, no provision of our Constitution nor the Federal Constitution is violated, and if, as contended by relator, he has been discriminated against, and the action of the council was but an arbitrary exercise of power, he has his remedy and can apply for a mandamus to compel its issuance. That the council had acted improperly in this instance, if they did do so, would not render the ordinance unconstitutional.

*Relator remanded to custody.*

ON REHEARING.

April 1, 1914.

HARPER, JUDGE.—Relator's counsel have filed a very able and exhaustive brief on motion for rehearing, exhibiting much research and learning. We have studied the authorities therein cited, and considered the able reasoning of relator's counsel, but it has not changed our opinion as to the constitutionality of the ordinance in question. That portion of the ordinance quoted in the original opinion, which it is claimed renders the ordinance invalid, is the clause which provides that before a person can establish or maintain a slaughter house, bone boiler establishment, etc., or stock pens, containing more than six head of cattle, within 300 feet of a private residence, *"a permit must be obtained from the city council,"* it being contended this clause would authorize the city council to act arbitrarily; to grant a permit to one citizen and refuse another the privilege, and this renders the ordinance unconstitutional. Relator admits that the United States Supreme Court sustained the validity of just such an ordinance in the case of Fischer v. St. Louis, 194 U. S., 361 (48 Law. Ed., 1018), but he insists that in that case it was not shown that the city council had under the provisions of the law acted arbitrarily, and then adds: "We believe we can show that the decisions of the Supreme Court of the United States, when

carefully considered with reference to the record presented in this case, are not against our position, but, when so considered, clearly support us. With due respect to the United States Supreme Court, it must be said and admitted that probably no court in this country has rendered more conflicting decisions than it has. There is hardly a question that has come before it for decision upon which its decisions are not apparently in almost hopeless conflict. It is, therefore, a matter of great importance, in determining the weight to be attached to its decisions, to examine same carefully and consider the same with reference to the very record and point presented." And then relator cites the case of Yick Wo v. Hopkins, 118 U. S., 356, and upon which he relies to sustain his contention that the ordinance is violative of the provisions of the Fourteenth Amendment to the Constitution. We would hardly feel authorized to thus assume to criticise the Supreme Court of the United States, and we do not think the two cases above cited authorize such conclusion, nor that the cases of Yick Wo v. Hopkins, and Fischer v. St. Louis are in hopeless conflict, but they both announce correct rules of law, and this is apparent when one takes into consideration the questions and issues being dealt with in those cases.

In the case of Yick Wo v. Hopkins, the City of San Francisco had prohibited any person in the city from pursuing the laundry business in a frame house in that city, without first having obtained permission of the city authorities. It was shown in that case that under such ordinance permits had been granted to all persons other than Chinese, and that permits had been refused to all Chinamen, more than two hundred in number, who had theretofore engaged in that business. The court holds that laundering is a legitimate business, and the pursuit thereof is not injurious to the public health or welfare of the city, and it was not a class of business which any man could be prohibited from pursuing, and not being hurtful nor harmful to the public welfare, the council could not prohibit it from being pursued, nor prohibit any man from pursuing that business. And as the ordinance by its operation, construction and application was so administered as to show that the intent and purpose of it was to prohibit a certain race of people from pursuing a legitimate trade or calling, which in and of itself could not be hurtful, it was illegal. Boiled to its last analysis, this was all that was held in that case. But in the case of Fischer v. St. Louis, the court and council were dealing with an entirely different business—one that in its nature was harmful, and which the city council would have the right to prohibit—the keeping of large herds of cattle within the corporation limits and near the thickly settled portions of the town. As said by the court: "We do not regard the fact that permission to keep cattle may be granted by the municipal assembly as impairing, in any degree, the validity of the ordinance, or as denying to the disfavored dairy keepers the equal protection of the laws. Such discrimination might well be made where one person desired to keep two cows, and another fifty; where one desired to establish a stable in the heart of the city, and another in the suburbs; or, where one was known to keep his

stable in a filthy condition, and another had established a reputation for good order and cleanliness. Such distinctions are constantly made the basis for licensing one person to sell intoxicating liquors and denying it to others. The question in each case is whether the establishing of a dairy and cow stable is likely, in the hands of the applicant, to be a nuisance or not to the neighborhood, and to imperil or conduce to the health of its customers. As the dispensing power must be vested in someone, it is not easy to see why it may not properly be delegated to the municipal assembly which enacted the ordinance." As is seen, the court was dealing in this case with a business, in the interest of public health, that might be altogether prohibited, and of necessity different rules of law apply in one instance and in the other. It is a matter of common knowledge that the herding or keeping of large herds of cattle in the narrow confines of a lot within the limits of a city, and near private residences or the business portions of the town produces offensive odors and conditions that breed disease and epidemics endangering human life. The droppings not only produce offensive odors, but attract numerous flies and other insects, and what is termed the "stable fly" is now recognized by the medical world as the carrier of the deadly diseases that infect at times our southern climate. Beaumont, as we know, is situated in the heart of the rice belt, where the land is low and in the main of a flat surface, near the Sabine river, with irrigation ditches abounding in that section, and it must protect itself and its citizens by proper sanitary regulations from what is termed malarial diseases. As is said in all the standard law books, the reason why the power to enact sanitary and health regulations is always conferred upon cities and municipalities is that they best know their conditions and needs, and what regulations will best subserve the health of its citizens, and when an ordinance is passed with this end in view, it must be clearly violative of some provisions of the Constitution before the courts will nullify it. While no State or municipality can arbitrarily deprive a citizen of his property, or the legitimate or proper use thereof, neither has the citizen the right to so use his property as to be hurtful and harmful to his neighbors, or the public. When a civil government was formed for our mutual protection and benefit, each citizen of necessity surrendered some rights and privileges, and could no longer be law unto himself. Mr. Dillon, in his work on Municipal Corporations, in discussing the class of ordinances involved in this case, says:

"Ordinances prohibiting certain acts without the consent or permit of the common council or the mayor or other executive officer, have in some cases been held to be unreasonable and void, because they submit the right of individuals to the unrestrained discretion of the council or official. It has been said of ordinances of this nature that they remove the rights of the individual from the domain of law and subject them to the exercise of arbitrary discretion on the part of the council or the officer upon whom the dispensing power is conferred; that it is unreasonable to reserve the right to grant or withhold the privilege as

it may suit the pleasure of the council or officer, and that to be valid an ordinance of this nature must lay down a uniform rule of action governing the exercise of the dispensing power.

"In these cases the remarks of the court appear to have been directed to the denial of any right or authority on the part of the city to subject the individual to an arbitrary discretion on the part of the council or of the officer upon whom the dispensing power is conferred. It is, however, to be observed that in the great majority, if not in all, of the cases cited, the ordinance was prohibitory in its nature, and in the view of the courts the acts sought to be prohibited *were not of themselves harmful or of such a nature as to justify prohibition.* But whilst the principles so laid down are supported by a respectable body of authority, it is believed that they are *contrary to the weight of the decisions.* Many cases are to be found sustaining ordinances prohibiting acts or even the following of trades or occupations without procuring permits which may be issued at the discretion of the council, mayor, or some other city officer or department, and the fact that the dispensing power was apparently conferred without restraint or qualification has been regarded as arising merely from the difficulty of defining in advance upon what conditions the permit shall be given or the dispensing power exercised. It has also been said that it is not to be assumed that the council or officer in exercising the dispensing power will act arbitrarily or otherwise than in the exercise of a sound discretion.

"It is, however, to be observed that in sustaining these ordinances in some instances the courts declared that it was within the power of the Legislature, or of the city council by virtue of delegated authority, to prohibit the act absolutely, and that the right to absolutely prohibit necessarily includes the authority to determine under what circumstances the act may be permitted, as the greater power contains the less. But in other cases this distinction does not seem to have been adverted to, and it appears to have been held that the constitutional rights of the individual are not affected in any way merely because the discretion to grant a permit to do an act or to exercise a trade or calling has been vested in a municipal board or officer. In these cases it appears to be assumed that if the trade or calling is properly of a nature which may be regulated or controlled by virtue of the police power, such regulation or control may be exercised by a prohibition unless a permit be obtained." (Sec. 598, 5th ed.)

Under the first paragraph of the above quotation will be found nearly all the cases cited by relator in his brief, and on pages 937, 938, 939 and 940 of volume 2, same edition, will be found a long list of authorities sustaining the view taken by that eminent law writer, Mr. Dillon, and conclusively showing that the weight of authority in this country is against relator's contention in this case, and where the city council is dealing with a subject, which is in the interest of public health, it may, if it is deemed proper, absolutely prohibit, unless permission is granted by the council, and reserve to itself the right to say whether or not a permit shall be granted.

And why should this not be so? The council is the legislature or law-making body of the city. At the granting of each license it may throw about such restrictions and regulations as the necessities of the case demand, and no one would contend that the same regulations would apply to the keeping of ten head of cattle as would be necessary if one hundred were to be kept, or that the city ought in any instance allow the keeping of a hundred head of cattle within the corporation within 300 feet of a residence or adjacent to the business portion of the city. In this instance the power is not delegated by the council to any other board or body of men, but it provides that the application shall be made to the council itself—the law-making body. Where could the discretion necessary to be exercised in instances of the character described in this ordinance more properly be lodged than in the council, which of necessity must pass the law, and that they reserve to themselves in granting permission to place all restrictions they deem necessary for the public welfare. And in those instances where the council deems that the keeping of more than six head of cattle would be hurtful and harmful to the health of its citizenship, or that the person applying is not such a person as would comply with the necessary regulations, or where it was desired to keep an unlimited number of cattle, to refuse permission altogether. As said in the original opinion, the facts are not sufficiently developed for us to determine whether or not the council in this instance has or has not acted arbitrarily in refusing relator permission to keep more than six head of cattle. There is no allegation as to the number he desired to keep within the city limits; no allegation that he would comply with all reasonable rules and regulations that might be prescribed by the council, or that he had offered to do so. He has not been tried for the offense, but when arrested for violating the provisions of the ordinance he sued out a writ of habeas corpus alleging that the ordinance on its face was unconstitutional. We do not deem it so, and he does not bring himself within the rules of law that would authorize us to grant him any relief, and the motion for rehearing is overruled.

*Overruled.*

DAVIDSON, JUDGE (dissenting).—I have been unable to agree with the conclusion of the majority as expressed in Judge Harper's opinion. I believe the legal propositions relied upon and presented by relator correctly present the law of the case. These propositions have been ably and forcefully stated by his counsel in their brief and written argument and so clearly reasoned and supported by authority they should have been sustained. So believing, I requested his counsel, Messrs. Dougherty & Gordon and Messrs. W. F. Ramsey and C. L. Black to formulate and state the propositions of law applicable to the case to form the basis of my dissenting opinion. They have done so, and so clearly and ably I have thought it but just and appropriate to adopt their statement of the law as my dissenting opinion, which I now do, which is as follows:

"1. The ordinance under review in this case, in effect, prohibits any person from keeping more than six head of stock within 300 feet of any hotel or private residence in the City of Beaumont *without first obtaining a permit from the city council.* The ordinance contains no conditions regulating the issuance of permits by the city council. It prescribes no conditions, upon the satisfaction of which the applicant for a permit would become entitled to same and entitled to enforce his right to same in the courts by proper remedy. The whole matter, under the terms of the ordinance, is left within the unconditioned and consequently uncontrollable discretion of the city council. Under the terms of this ordinance, the city council may grant a permit to one person and refuse it to another under the same circumstances, and there would be, if the ordinance is valid, no legal remedy for the person to whom a permit is refused. I think the overwhelming weight of authority condemns such an ordinance as void, upon the ground that it subjects the right to the lawful ownership and use of the property to the unconditioned and arbitrary discretion of the city officers. The following are a few of the cases condemning as void ordinances similar to the one here under review:

"Yick Wo v. Hopkins, 118 U. S., 356 (prohibiting the establishment and maintenance of laundries except in brick and stone buildings within the City of San Francisco without first obtaining a permit from the Board of Supervisors).

"Barthet v. City of New Orleans, 24 Fed. Rep., 563 (ordinance void prohibiting the maintenance of a slaughter house within certain limits of the city, unless permission be first granted by the city council).

"State v. Mahner, 45 La. Ann., 496, 9 So. Rep., 480 (ordinance void forbidding the maintenance of dairies within certain limits of the city without a permit from the city council).

"Dubarry v. State (La.), 11 So. Rep., 718 (ordinance void prohibiting the keeping of a private market within the city without permission of the city council).

"Montgomery v. West (Ala.), 42 So. Rep., 1000, 123 American State Reports, 33, and note (ordinance void prohibiting the operating of steam engine, foundry, cotton gin, bakery or establishment for boiling soap in the city without first obtaining the consent of the city council).

"May v. The People (Colo.), 27 Pac. Rep., 1010 (an ordinance void which prohibited the storing of hides or pelts within the city limits without permission of the council).

"Mayer v. Radecke, 49 Md., 230, 33 American Reports, 239.

"Mayor and City Council of Hagertown v. Baltimore & O. R. Co. (Md.), 68 Atl. Rep., 490 (an ordinance void, prohibiting the keeping of live stock within 250 feet of two private residences within the limits of the town, without a permit from the mayor and city council—almost literally the same as the ordinance here involved).

"Cicero Lumber Co. v. Town of Cicero (Ill.), 51 N. E. Rep., 758 (ordinance void which prohibited the driving of omnibuses or heavy

vehicles over a certain boulevard without a permit therefor from the board of trustees of the town).

"Noel v. People (Ill.), 58 N. E. Rep., 616 (Act void which delegates power to a State Board of Health to issue permits and does not prescribe restrictions or conditions).

"City of Richmond v. Dudley (Ind.), 28 N. E. Rep., 312 (ordinance void which prohibits the storing of oils or inflammable materials in the city except by persons or at places permitted by the city council).

"City of Elkhart v. Murray (Ind.), 75 N. E. Rep., 593 (adhering to the rule stated in the last case).

"Bear v. Cedar Rapids (Iowa), 126 N. W. Rep., 324 (ordinance void providing that no person should be allowed to sell milk within the city without first obtaining a permit from the Board of Health, and not providing any conditions upon which permits shall be issued or withheld).

"Walsh v. City of Denver (Colo.), 53 Pac. Rep., 458 (ordinance requiring butchers to obtain a permit from the health committee of the city before carrying on their business, and not containing any conditions or regulations governing issuance, held void).

"Commonwealth v. Maletsky (Mass.), 89 N. E. Rep., 245 (ordinance void which prohibits any person to occupy or use a building for the purpose of picking, storing or assorting rags, without a written permit from the chief of the fire department, and no conditions prescribed).

"City of Richmond v. Model Steam Laundry (Va.), 69 S. E. Rep., 932 (ordinance void which prohibits a certain act to be done except by a permit from the city council).

"Boyd v. Council (Ky.), 77 S. W. Rep., 669 (ordinance void which prohibits any person from erecting any structure within the city without the permission of the common council, no conditions being prescribed).

"Mayor v. McCann (Tenn.), 58 S. W. Rep., 114 (ordinance void which makes it unlawful for the proprietor of any saloon where intoxicating liquors are sold to enter his saloon on Sunday for any purpose without obtaining a written permit from the mayor).

"Goodale v. Sowell (S. C.), 40 S. E. Rep., 970, laying down the same principle.

"Village v. Van Camp (Wis.), 117 N. W. Rep., 1012 (ordinance void which provided that all saloons of the village should close at 11 o'clock and remain closed until 5 o'clock, unless by special permit of the president of the village).

"State v. Crepeau (R. I.), 71 Atl. Rep., 449 (ordinance void which undertakes to control the construction of buildings without a permit first obtained, and does not define conditions under which permits may be obtained).

"City v. Kirby (S. D.), 60 N. W. Rep., 156, construing a similar ordinance and holding same void.

"State v. Kuntz (La.), 16 So. Rep., 651 (ordinance void which prohibits the stabling of more than two horses within the city without a permit from the city council).

"Los Angeles v. Hollywood Cemetery Association (Cal.), 57 Pac. Rep., 153 (annulling an ordinance prohibiting the enlarging of cemeteries without the council's permission, no conditions being prescribed).

"Ex parte Theisen (Fla.), 11 So. Rep., 901 (annulling an ordinance forbidding liquor sales within certain districts of the city without the council's consent).

"State v. Tenant, 110 N. C., 609 (ordinance void which prohibits the erection of buildings without the permission of the aldermen, no uniform rules being prescribed to obtain permits).

"State v. Dearing (Wis.), 54 N. W. Rep., 1105 (annulling an ordinance prohibiting parading in the city without the mayor's permission).

"Bostock v. Sams, 52 Atl. Rep., 665 (condemning ordinance similar in effect).

"Some of the foregoing cases, as will be noted, involve ordinances almost identical with the one here construed. All of them involve the application of a similar principle. It is not necessary to quote from them in detail. The following quotation, however, in the case of Cicero Lumber Co. v. Town of Cicero (Ill.), 51 N. E. Rep., 758, evidences a course of reasoning which will be found in all the above cases and which states clearly the grounds upon which these ordinances are held void: 'It prohibits that which is in itself and as a general thing perfectly lawful and leaves the power of permitting or forbidding the use of traffic teams upon the boulevard to an unregulated official discretion, when the whole matter should be regulated by permanent legal provisions, operating generally and impartially. The ordinance is not general in its operation. It does not affect all citizens alike to use traffic vehicles. It is only persons driving traffic vehicles upon the boulevards without the permission of the board of trustees who are subjected to the penalties of this ordinance. The ordinance in no way regulates or controls the discretion vested thereby in the board. It prescribes no conditions upon which the special permission of the board is to be granted. Thus the board is clothed with the right to grant the privilege to some and to deny it to others. Ordinances which thus invest the city council or board of trustees with a discretion which is purely arbitrary and which may be exercised in the interest of a favored few are unreasonable and void.'

"The following quotation from State v. Mahner, 9 So. Rep., 480, where the court had under review an ordinance almost identical with the one here involved, is clearly in point:

" 'The ordinance is not general in its operation. It does not affect all citizens alike who follow the same occupation which it attempts to regulate. It is only those persons who keep more than two cows in the prohibited limits without the permission of the city council who are subjected to the penalties in this ordinance. The discretion vested by the ordinance in the city council is in no way regulated or controlled. There are no conditions prescribed upon which the permit will be granted. It is within the power of the city council to grant the privilege to some, to deny it to others. The discretion vested in the council is purely

arbitrary. It may be exercised in the interest of a favored few. It may be controlled by partisan considerations and race prejudices, or by personal animosities. It lays down no rules by which its impartial execution can be secured or partiality or oppression prevented.'

"The same reasoning is applicable to the ordinance, with the violation of which the relator is charged. It does not prohibit all persons within the city of Beaumont from keeping more than six head of stock within 300 feet of a private residence. It prohibits only those to do this who are unable to secure a permit from the city council; and does not prescribe any conditions regulating the issuance of permits and upon compliance with which the citizen could enforce in the courts the issuance of same. In this connection it should be remembered that it is not even pretended that, aside from this ordinance, the keeping of more than six head of cattle in a city is an unlawful act or is, in itself, a nuisance. In other words, this ordinance undertakes to prohibit or regulate an otherwise lawful use of property. This being true, it should have prescribed conditions and regulations governing the issuance of permits, so that, upon a compliance with same, a citizen desiring a permit could enforce his right to same by appropriate remedy in each case.

"2. I am also unable to agree with the position of the majority, stated in the original opinion, that the proper remedy, if any, for the relator is that of mandamus. If this ordinance is valid, it confers upon the city council a pure and uncontrolled discretion with reference to the issuance of permits. This being true, no court would issue a writ of mandamus to compel the issuance of same, for the rule is elementary that, before the writ of mandamus will issue, it must appear that the duty is ministerial. The cases cited in the majority opinion, holding mandamus to be a proper remedy to compel the issuance of a license, upon examination, will be found to be cases where the ordinance or statute under which the license was to be issued prescribed regulations and conditions governing the issuance of same and upon compliance with which the applicant became absolutely entitled to the license. This ordinance prescribes no conditions and no regulations. It would, therefore, be an impossibility for the applicant, in his petition for mandamus, to make it appear that he had satisfied all conditions, for the reason that none are prescribed. The whole matter is left unconditioned and, as stated· in many of the authorities, consequently uncontrollable discretion of the city council. It is upon this very ground that these ordinances have been generally held void by the courts. An examination of the authorities hereinbefore cited will show that many of the courts have regarded this fact as of controlling importance in determining that the ordinance construed was invalid. See also the following: Yick Wo v. Hopkins, 118 U. S., 356; Cyc., vol. 23, p. 138; Cyc., vol. 25, p. 623; Ry. Co. v. Railroad Commission, 95 Texas, 671; Sherman v. Smith, 35 S. W. Rep., 395; Brown v. Houston, 48 S. W. Rep., 760; Lewright v. Bell, 94 Texas, 556; Teat v. McGaughey, 85 Texas, 478.

"3. I am also unable to agree with the conclusion of the majority

that the decisions of the Supreme Court of the United States are against the position of the relator. This case, it seems to me, presents, in all material respects, the same question presented in the great case of Yick Wo v. Hopkins, 118 U. S., 356. The ordinance there under review prohibited the establishment and maintenance of laundries within the City of San Francisco not built of brick or stone, without the permission of the board of supervisors. It was the object of the ordinance to prevent the establishment and maintenance of laundries in wooden buildings. The Supreme Court of California held it to be a valid police regulation. The Supreme Court of the United States also admitted that the police power of the city extended over the subject matter covered by the ordinance, but it held the ordinance void upon two grounds: First, that, on its face, it clearly vested in the city council an unconditioned and uncontrollable discretion with reference to the issuance or withholding of permits to establish and maintain laundries in the city. The ordinance, just as the one here under review, prescribed no conditions, upon the satisfaction of which one became entitled to the permit. It left the whole matter to the arbitrary discretion of the board, and the court held the ordinance void on that ground. Second, it further held the ordinance void on the ground that, aside from what might be its natural or possible operation it had in fact been so construed and so applied by the municipal authorities as to result in an actual discrimination. The court there laid down the rule which it has since followed in many cases that, in determining whether a given act or ordinance is violative of the Fourteenth Amendment, it will not confine itself to the mere language of the Act or ordinance, but will look rather to its actual construction and administration by those whose duty it is under the laws of the State to construe and administer it. The facts of that case show that the ordinance under review had been so construed and so applied by the city authorities as to create against the relator a discrimination violative of the Fourteenth Amendment, and it was held that he was entitled to relief without reference to whether the ordinance was on its face void or not. Now, in the later case of Fischer v. St. Louis, 194 U. S., 361, cited in the majority opinion, the court had under consideration merely the question as to the bare validity of the ordinance considered aside from its actual operation. The court, in that opinion, calls attention to the fact that no complaint was made as to the actual operation of the ordinance and that it was not contended that there had been any discrimination in the operation of the ordinance. This fact distinguishes the case from the case of Yick Wo v. Hopkins and from the case here presented. It is agreed in the record on this appeal that there are twenty-three other places in the City of Beaumont, situated within 300 feet of a private residence and situated exactly under the same conditions as the relator as to sanitation and proximity to residence, where more than six head of stock are kept by the permission of the city council. In other words, it is admitted in this record that the relator is prosecuted for the violation of this ordinance, when twenty-three other persons in the city of Beaumont, situated exactly similar to

himself in all material respects, have been granted permits under this ordinance to do the same act. It therefore appears that, as this ordinance is construed and administered by the city authorities, it has resulted in actual discrimination against the relator, in violation of the Fourteenth Amendment. As stated in the case of Yick Wo v. Hopkins, it is not necessary for this court, in deciding the case at bar, to reason from the probable to the actual and pass upon the validity of this ordinance as tested merely by the opportunities which its terms afford of unequal and unjust discrimination in its administration, for the record as presented shows that the ordinance, in its actual operation and actual administration by the city authorities, has resulted in an unconstitutional discrimination against the relator. It was said in the case of Yick Wo v. Hopkins:

" 'Though the law itself be fair on its face and impartial in its appearance, yet if it is applied and administered by public authority with an evil eye and an unequal hand so as practically to make unjust and illegal discrimination between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the Constitution.'

"The same must be said in the case at bar. Even though this ordinance be fair on its face, yet it appears from the record that it has been so construed and so operated by the city authorities charged with the duty of administering it as to result in a discrimination, whereby this relator is prosecuted for the doing of an act which twenty-three of his neighbors are permitted to do under the express sanction of the city council.

"I find nothing in Mr. Dillon's work on Municipal Corporations that militates against this view. In section 598, just following what is quoted in the majority opinion, the learned author says:

" 'There are, however, limits to the principle (referring to the principle quoted in the majority opinion). Thus, for example, if it is shown that the power thus conferred upon the counsel or officer is in fact arbitrarily exercised against the individual under the sanction of the State authority to deprive him of rights which he ought to be permitted to enjoy by discriminating against him in the enjoyment of these rights, the Supreme Court of the United States has given redress when the case has come before it in such manner as to authorize the interference of a Federal court,' citing Yick Wo v. Hopkins, supra.

"It thus appears that Mr. Dillon recognizes the distinction between the doctrine of the case of Yick Wo v. Hopkins and the doctrine announced in Fischer v. St. Louis. The doctrine last quoted should apply to this case with peculiar force, for it is agreed in the statement of facts that the relator is situated as to sanitation and proximity to residence in the same way as twenty-three other persons to whom the city council has issued permits. No reason is suggested in the record why he is thus discriminated against.

"I further find, in the recent case of Los Angeles v. Home Telephone Co., 227 U. S., 278, 57 Law. Ed., 510, that the Supreme Court has

recently again held that, even though a State law or municipal ordinance be undiscriminating on its face, yet it is enforced in such a manner as to create discrimination, relief will be afforded. The case also cites with approval Yick Wo v. Hopkins, and many other authorities, laying down the same rule. I am sure that, in the case of Fischer v. St. Louis, supra, the Supreme Court did not intend to overrule the case of Yick Wo v. Hopkins, or in anywise to limit the effect of that great case. In the first place, the court, in deciding Fischer v. St. Louis, does not even refer to the case of Yick Wo v. Hopkins, and, in the second place, I find that, in many cases decided since Fischer v. St. Louis was decided, the court has expressly approved the holding of Yick Wo v. Hopkins. (See Los Angeles v. Home Telephone Co., supra; also State v. Van de Carr, 199 U. S., 552.) I think in this case that the agreed statement of facts shows that this ordinance is so administered as to create a discrimination. No reason is suggested in the record why the relator should be refused the permit when twenty-three of his favored neighbors are granted permits. 'The discrimination is, therefore, illegal and the public administration which enforces it is a denial of the equal protection of the laws and a violation of the Fourteenth Amendment of the Constitution. The imprisonment of the petitioner is therefore illegal and he should be discharged.'

"If, however, it can be said that there is conflict between the case of Yick Wo v. Hopkins, and Fischer v. St. Louis, then I am constrained to follow the first cited case. I find that the opinion of the court in Fischer v. St. Louis is criticised as unsound by no less an authority than Judge A. C. Freeman, the great editor and annotator of the American State Reports, in his note to the case of Montgomery v. West, volume 123, page 41. I further find that the case of Yick Wo v. Hopkins has been cited with approval and followed by nearly all of the State courts before which this question has come for decision. (See authorities cited in the first section of this opinion.) It is approved by the great writers on constitutional law. It is generally regarded as one of the greatest decisions ever handed down by the Supreme Court of the United States, and is in fact almost a legal classic. I am unable to believe that a case so well considered, so often cited and so universally approved announces any doctrine that is unsound. The following quotation from the opinion states a principle which has been many times quoted with approval and which, if followed, renders the ordinances here construed void beyond all question:

"'When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limita-

tion of power. It is, indeed, quite true, that there must always be lodged somewhere, and in some person or body, the authority of final decision; and, in many cases of mere administration the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage. But the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts Bill of Rights, the government of the commonwealth "may be a government of laws and not of men." For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself.'

"I agree to this doctrine. A municipal ordinance which grants to certain municipal officers the unregulated, unconditioned and consequently arbitrary and uncontrollable discretion to determine whether a citizen shall enjoy, within the city, the lawful use of certain property should be stricken down as void. The ordinance under review commits to the city council of the City of Beaumont the unregulated, unconditioned and unrestrained discretion to determine whether or not a person residing in the city shall keep more than six head of stock. The ordinance prescribes no conditions or regulations governing the issuance or withholding of permits. A citizen of the city would be powerless in any court to enforce the impartial administration of this ordinance. The ordinance is, therefore, void, 'for the very idea that one man may be compelled to hold his life or the means of·living, or any material right essential to the enjoyment of life at the mere will of another seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself.' "