## CITY OF WICHITA FALLS v. ROBERSON.
### (No. 11622.)

(Court of Civil Appeals of Texas. Fort Worth. March 6, 1926. Rehearing Denied April 10, 1926. Motion to Certify Denied May 1, 1926.)

1. **Monopolies** ⊂⊃ 12(2) — **Municipal corporations** ⊂⊃ 625—**Ordinance regulating slaughterhouses and sale of meat held not unreasonable or unconstitutional as creating monopoly.**

Ordinance prohibiting construction of abattoirs and slaughterhouses unless constructed according to specifications contained in ordinance, and providing for city inspection of employés of slaughterhouses and animals slaughtered, and prohibiting sale as food of animals not inspected and slaughtered at such slaughterhouses, held not unreasonable or unconstitutional as creating a monopoly.

2. **Injunction** ⊂⊃ 85(1)—**Unless ordinance, enforcement of which is sought to be enjoined, is void or unconstitutional, plaintiff's case must fail on ground that he has plain legal remedy.**

Unless ordinance, enforcement of which is sought to be enjoined, is void or unconstitutional, plaintiff's case must fail on ground that he has plain legal remedy, and hence is not entitled to equitable remedy of injunction.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Mart Roberson against the City of Wichita Falls. Judgment for plaintiff, and defendant appeals. Reversed, and remanded for further proceeding.

Mathis & Caldwell and W. E. George, City Atty., all of Wichita Falls, for appellant.

Taylor, Muse & Taylor, of Wichita Falls, for appellee.

CONNER, C. J. This action was instituted by Mart Roberson against the city of Wichita Falls, Tex., seeking to enjoin the city from enforcement of one of its ordinances. The ordinance was No. 582 and relates to abattoirs or slaughterhouses. That the city of Wichita Falls is a duly incorporated municipality is not 'questioned; nor is the regularity of the enactment of the ordinance ques-

tioned. It is attacked, as will more fully hereinafter appear, as violative of several articles of the Constitution, as discriminatory, as creating a monopoly, as unreasonable and oppressive, and as in effect denying plaintiff and others similarly situated the right to pursue their business as butchers.

The ordinance, as finally enacted, provides that abattoirs, slaughterhouses, or other buildings designed, constructed, or used as a place at or in which to slaughter animals intended for use as food or sold or offered for sale as such in the city of Wichita Falls, shall be substantially constructed of material chosen because of its easy adaption to perfect cleanliness as an abattoir; that the plant must provide stock pens, killing rooms, chill rooms, cold storage and refrigerating rooms and reduction department; that each department must be equipped with concrete floors, trowel finished with bell traps, water seals, and connected with the city sewers, and equipped with adequate disposal arrangements and troweling trolleys, insulation, etc., where directed by the building inspector of the city; that those desiring to construct and maintain an abattoir must apply therefor to the board of aldermen of the city, giving the purpose, location, and probable cost, together with complete plans and specifications showing in detail the proposed arrangement, material, equipment, stock pens, chutes, etc.; that such plans and specifications shall be examined by the building inspector and board of aldermen and, if all is in compliance· in all material respects with the ordinance, a written permit· for its erection shall be issued.

It further provides that no animals intended for slaughter shall remain on the premises immediately adjoining longer than is necessary for inspection and immediate slaughter; that no animal shall be slaughtered that is not "passed" by the city health inspector; that animals slaughtered shall be inspected during the process of slaughtering by the city health inspector and by him tagged, marked, and stamped; that the offal, blood, and. refuse from slaughtered animals and condemned by the city health officer shall be immediately placed in a reduction plant, or otherwise destroyed; that all trucks, traps, and ·other receptacles, all chutes, platforms, racks, tables, knives, saws, cleavers, and other articles used in moving, handling, cutting, and chopping slaughtered animals, shall be entirely cleaned before using; that all employés shall be examined by the city physician and no person affected with tuberculosis or other communicable disease shall be employed in any of the departments where carcasses are dressed and meat handled; that all employés shall be examined once a month or as directed by the city health officer who is required to report their

condition; that all employés must be cleanly dressed, of material that is readily cleaned and made sanitary, and that only clean garments shall be worn; that employés shall be required to keep their hands sanitary, finger nails, boots, and shoes clean; that cuspidors shall be provided and no employé or other person shall be permitted to expectorate on the floor; that water closets, toilet rooms, and dressing rooms shall be required for employés, and shall be entirely separated from compartments in which carcasses are dressed or food products are stored or handled, etc. And numerous other details are specified of like character, evidently designed to secure cleanliness and purity of food products.

The ordinance further provides that all slaughtering must be at abattoirs or slaughterhouses from and after the passage of the ordinance, and that it shall be unlawful for any vendor of meat to have any animal slaughtered or exhibited for sale as food within the limits of the city of Wichita Falls at any abattoir or slaughterhouse not equipped, managed, operated, and kept in accordance with the provisions of the ordinance, and that any person violating the provisions of the ordinance shall be guilty of a misdemeanor and may be fined in a sum not to exceed $200.

The ordinance further provides that no person shall use as food or offer to sell to others as food any animal not inspected by the city health officer and slaughtered at some abattoir or slaughterhouse not constructed, maintained, and operated in accordance with all the provisions of this ordinance, and any violation of this provision shall be deemed a misdemeanor and may be fined in a sum not to exceed $200.

The ordinance further provides a schedule of fees for slaughtering and delivering all animals slaughtered, such as $2.50 for each beef; $1.50 for goats, hogs, sheep, and calves.

The concluding section recites:

"That on account of and by reason of the danger to the inhabitants and persons within the city because of the unwholesome fresh meats which are being sold within the city of Wichita Falls, creates an emergency, by reason of which it is necessary for the immediate preservation of the public health that this ordinance shall be in effect from and after its passage, approval and five days' publication and it is ordained that same so take effect.

· "Passed and approved this the 14th day of October, A. D. 1925."

Upon the filing of the plaintiff's petition, the court ordered that defendant be cited to appear before it upon a day named and show cause why the relief prayed for should not be granted. The defendant city appeared and answered by a general demurrer, a general denial, and special exceptions, which demurrers were overruled and a hearing had upon the evidence. The only evidence offered was the ordinance attacked and the city charter, upon consideration of which the court granted the prayer of plaintiff's petition, adjudged the ordinance to be void as unconstitutional and discriminatory, and ordered the issuance of a temporary writ of injunction as the plaintiff prayed for, to which judgment the city excepted and, as before stated, prosecutes this appeal.

The power of a municipality of the class of the city of Wichita Falls to enact ordinances of the character of the one under consideration has been treated so frequently in the books that it seems superfluous to discuss the question at length.

The charter of the city of Wichita Falls expressly confers the power upon the city to define, prohibit, abate, suppress, and prevent within the city, and for a distance of 5,000 feet outside of its limits, all nuisances and causes thereof and all things detrimental to health, morals, safety, convenience, and welfare of its inhabitants; to provide for such inspection service within and without the city as may be necessary to insure the purity and wholesomeness of its food products sold within the city; to do all things necessary or desirable to secure and promote the public health; to regulate the construction, location, height, and material used in all buildings, and in the maintenance and occupancy thereof; to license and regulate persons, corporations, and associations engaged in any business, occupation, profession, or trade; to make and enforce local police, sanitary, and other regulations; to pass such ordinance as may be expedient for maintaining peace, safety, good government, and welfare of the city, and for the performance of the functions thereof; and to exercise in addition to the powers enumerated in this section all powers not forbidden by the Constitution or laws of this state that have been granted to municipalities under our general laws, etc.

In 28 Cyc. p. 692, it is said:

"The police power of the state, being an expression of the instinct of self-preservation and protection characteristic of every living creature, is an inherent faculty and function of life, attributed to all self-governing bodies as indispensable to their healthy existence and to the public welfare. It embraces all rules and regulations for the protection of the lives, limbs, health, comfort, and quiet of persons, and the preservation and security of property."

On page 730 of the same volume, it is further said:

"The slaughter within the city of animals for food, and particularly the houses and equipments for such purposes, are within the police regulation of a municipality. For the sake of public health and comfort therefore a municipality, in the exercise of its police power, may prescribe the character of buildings and equipment for slaughterhouses, and the lim-

its within which they may be erected and maintained."

In the case of Milwaukee v. Gross, 21 Wis. 241, 91 Am. Dec. 472, the Supreme Court of Wisconsin held that a municipal corporation of Milwaukee had a right, by ordinance, to establish a city slaughterhouse and to regulate said slaughterhouse and to prohibit the sale of diseased meat in the city. It was further held that the ordinance was valid, even though it held that all meat must be slaughtered at the city slaughterhouse.

In the case of Ex parte Broussard, 74 Tex. Cr. R. 333, 169 S. W. 660, it was held by our Court of Criminal Appeals that a city ordinance providing that it shall be unlawful to establish or maintain any stock pens within 300 feet of any hotel or private residence in the city without first obtaining a permit from the city council was a valid ordinance and was a proper exercise of the city police powers and was not unconstitutional.

In the case of Fischer v. City of St. Louis, 194 U. S. 361, 24 S. Ct. 673, 48 L. Ed. 1018, the Supreme Court held that an ordinance which provided that "no dairy or cow stall shall hereafter be erected, maintained or established within the limits of this city without first having obtained permission so to do from the municipal assembly," was a valid ordinance and was not in violation of the Fourteenth Amendment of the Constitution.

In the case of Langley v. City of Dallas (Tex. Civ. App.) 252 S. W. 203, it was held that a municipal corporation has the authority by ordinance to require all persons engaged in the operation of food establishments to have medical examinations of themselves and their employés.

In the case of Ex parte Vaughan, 93 Tex. Cr. R. 112, 246 S. W. 373, it was held that a municipal corporation has authority to pass a valid ordinance requiring all barbers to be inspected and examined to determine whether or not they are free from contagious diseases.

[1] Many other authorities illustrative of the trend of the decisions relating to the subject might be given, but we think enough has been cited to make it apparent that the power of the city of Wichita Falls to make reasonable regulations governing the slaughtering of animals intended for food within the city cannot be doubted. The power of the Legislature to vest in a municipality such powers is not questioned, and we see nothing in the ordinance violative of the Constitution which prohibits the creation of a monopoly. The ordinance in question does not forbid any person, corporation, or association from building an abattoir such as prescribed in the ordinance. The fact, if true, as alleged, that appellee is without financial resources sufficient to enable him to build an abattoir of the character required, presents no legal ground for denying the city a proper exercise of its police powers. We see nothing in the ordi-

nance, so far as it affects the appellee, or those similarly situated, which constitutes an unreasonable stipulation. We have no evidence before us from experts or otherwise from which we can say that the regulations prescribing the character of building, the precautions to be taken to insure cleanliness, freedom from disease, etc., are not reasonably calculated to insure the purity of slaughtered animals and the meat to be furnished as food to the citizens.

It appears to have been held below that the ordinance under consideration is particularly objectionable, in that it provides penalties for selling or offering for sale meats not slaughtered in an approved abattoir, or at some abattoir constructed and operated under some similar law or ordinance, and in that it forbids any resident of the city from using as food or from offering to sell to others as food any animals or portions thereof not regularly inspected and not slaughtered in an approved abattoir or at some abattoir constructed and operated under some similar law or ordinance, and that hence the inhabitants of the city are precluded from ever securing "country sausage, backbone and spare ribs," or other meats, from the farm. We hardly think it necessary to further cite or discuss cases illustrating the very wide power given to the states and agencies established by the states to control and regulate those things that may injuriously affect the life or health of the citizens. This power is generally denominated as the police power, by virtue of which it is well known that one state may exclude the importation of cattle or other animals without inspection and compliance with regulations calculated to prevent diseases. Under this power the city may provide for vaccination of pupils of schools to prevent diseases, residents and persons affected with communicable diseases may be quarantined, and other like instances will readily occur to the mind. But, however objectionable the particular regulations just mentioned may be, the appellee in this case has not brought himself within their scope.

He makes no complaint that he has been prevented from purchasing meats from the farmers or other persons. His complaint is that the regulations under consideration operate in effect to destroy his business as a butcher and create a monopoly. But, if it be conceded that those particular provisions are unreasonable and unenforceable, it does not follow that other provisions may not be upheld. See State v. Cage (Tex. Civ. App.) 176 S. W. 928; Young v. City of Colorado (Tex. Civ. App.) 174 S. W. 986, and cases there cited. We, hence, will not undertake at this time to determine the effect of these particular provisions. We think it will be time enough when a case of equitable cognizance is presented by some citizen who has been deprived of purchasing meat of the kind and from the source indicated.

[2] It may be further said that, should a citizen so complain and thus subject himself to the penalties of the ordinance, it would seem that he has a clear legal remedy by virtue of which the validity of the ordinance in these respects can be tested. Indeed, our discussion of the ordinance at large has been with the view only of indicating our view that the appellee's petition and the facts proven on the trial do not clearly show that the ordinance under consideration is void, and unless it is void or in violation of some law or constitutional provision, which we fail to find, then appellee's case must fail on the ground that he has a plain legal remedy, and hence not entitled to the equitable remedy of injunction.

The case of City of Tyler v. Story, 44 Tex. Civ. App. 250, 97 S. W. 856, is one in which it appears that the city of Tyler enacted an ordinance declaring it to be unlawful for any person, firm, association, or corporation, to keep or have any hog or hogs in any lot, yard, pen, and pasture, or in any other place within one mile from the center of the public square in said city. The ordinance prescribed penalties for its violation, and Story complained that he was engaged in raising fine hogs in the city of Tyler for sale and was so engaged before said ordinance was passed; that his premises where he raised and kept his hogs were within one mile from the public square, but were isolated from the public, not on any public street, nor close to any residence, and were kept clean, free from any stench or odor, and in a sanitary condition; that he had invested large sums of money in his business and realized a net annual income therefrom of $800. He charged that the ordinance was discriminatory and violated the Constitution, in that it took, damaged, and destroyed his property, and deprived him of such property, privileges, and immunities without due process of law, and that it was unreasonable, etc. The court held that Story was not entitled to the injunction against the city that he had secured, citing the general law that a court of equity cannot be invoked to enjoin criminal prosecution where the applicant has a plain, adequate, and complete remedy at law. Exceptions to the rule were recognized but none of the exceptions pointed out apply, we think, in this case.

The case of Winn v. Dyess (Tex. Civ. App.) 167 S. W. 294, was an effort to enjoin a county attorney and others from putting into effect the pool room law, pending a contest of an election at which it was determined not to license pool tables. The injunction was denied and it was said that the enforcement of an unconstitutional statute will not be enjoined, for, if it is unconstitutional, that defense may be interposed in any proceedings to enforce it, and hence the party has an adequate remedy at law.

The case of City of Graham v. Seal (Tex. Civ. App.) 235 S. W. 668, by this court, was one in which Seal sought to enjoin an ordinance of the city of Graham requiring persons operating motor vehicles for hire within the city limits to procure a license from the city, and also a state chauffeur's license from the tax collector of the county, and prescribed penalties for its violation. It was held, in effect, that the invalidity of the license, if any, could be tested in a defense to a prosecution under the ordinance, and hence that Seal was not entitled to the relief he sought.

Another case of similar import is that of the city of Breckenridge v. McMullen (Tex. Civ. App.) 258 S. W. 1099. The ordinance attacked in that case was one classifying particular matter as "garbage," and prohibiting any one but a licensed garbage officer from hauling such garbage. The plaintiff alleged that for some time prior to the enactment of the ordinance he had been engaged in the hauling and moving from the premises of various persons the material designated and defined in the ordinance as garbage, and thereby had earned $1,200 per year therefrom; that the ordinance excluded and prohibited the plaintiff from hauling and moving garbage from his own premises, etc. It was held that the plaintiff's case was not brought within any of the exceptions, which were pointed out in the decision, to the general rule denying the equitable relief of an injunction against a criminal statute, and the injunction was denied.

We conclude that it cannot be said that the ordinance invoked in this case, as a whole, is void or violative of any constitutional provision invoked, or that plaintiff's petition or the facts proven on the trial come within any exception to the general rule which denies equitable relief from the enforcement of a criminal statute.

The judgment below will accordingly be reversed, the temporary writ of injunction vacated and dissolved, and the cause remanded for such further proceedings, if any, as may not be inconsistent with this opinion.