FOCKE, WILKENS & LANGE v. HEFFRON.
(No. 7412.)

(Court of Civil Appeals of Texas. Galveston. June 19, 1917. Rehearing Denied Oct. 4, 1917.)

1. MUNICIPAL CORPORATIONS ☜621—BUILDING ORDINANCES — VALIDITY — POWERS OF COUNCIL.

Galveston ordinance making it unlawful, "except when otherwise ordered by the board of commissioners," to erect any wooden buildings within certain limits, is' valid, and confers power upon the commissioners, by issuing a building permit, to authorize the building of a wooden structure within the limits specified.

2. INJUNCTION ☜5 — RIGHT TO REMEDY — MANDATORY INJUNCTION.

The mere fact that plaintiffs' fire hazard and rates of insurance were greatly increased by erection and maintenance of a building of wood on the adjoining lot under valid permit did not entitle them, by mandatory injunction, to require the building to be torn down, especially when, with full knowledge in advance, they stood by and made no complaint until the building was finished.

Error from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by Focke, Wilkens & Lange against Isaac Heffron. Judgment for defendant and plaintiff brings error. Affirmed.

McDonald & Wayman, of Galveston, for plaintiff in error. Geo. Q. McCracken and Frank S. Anderson, both of Galveston, for defendant in error.

GRAVES, J. Plaintiffs in error filed this suit against defendant in error, alleging, in substance, that they were the owners of a building of the value of $60,000, located inside the fire limits of the city of Galveston, in which they kept and conducted a wholesale grocery house, carrying at all times merchandise to the value of approximately $100,000; that defendant had erected, and was maintaining on the adjoining lot, a building and its appurtenances constructed of wood, partially covered with thin sheets of corrugated iron, and that such building was erected in violation of ordinances of the city of Galveston, commonly known as the "Building Code," prescribing the kind and character of buildings that might be erected within certain designated limits, known as the fire limits; that, by reason of the maintenance of such building, their property was subjected to a great fire hazard, and that the annual premiums on their insurance had, by reason thereof, been increased as much as $400. After setting forth the provisions of the ordinances, hereinafter quoted, and after pointing out the particulars wherein it was claimed the building failed to conform to the Building Code, they prayed for the issuance of a mandatory injunction requiring defendant to take down his building, or make it conform to the Building Code, and also asked for damages to the amount of their increased insurance premiums.

Defendant, among other things, answered, in substance, that he was granted a permit under the Building Code by the board of city commissioners of the city of Galveston, authorizing him to erect and maintain such building, and that pursuant to such permission, he erected the same; that the building did conform, in fact, to the permit granted, and to the Building Code, attaching to his answer as an exhibit a copy thereof; that

plaintiffs had notice of the commencement of the construction of the building complained of, and permitted defendant to construct the same without objection, and that they made no protest; and that, by reason of not having offered to reimburse defendant for the moneys expended by him in the erection of the building, they were not entitled to a mandatory injunction. The court found the facts to be substantially as thus alleged in this answer.

Trial was had before the court without a jury, resulting in a judgment in favor of defendant in error, and that plaintiffs is error take nothing by their suit. The latter have appealed.

Such further statement as is thought necessary will be made in what follows.

The main contentions of plaintiffs in error are presented under their first and second assignments, which may be somewhat abbreviated as follows:

(1) "The court erred in his failure to hold under the undisputed evidence that the building erected by defendant was not erected in violation of section 179 of said Code, in that said building is not inclosed on all sides with walls constructed wholly of stone, brick, Portland cement, concrete, iron, or steel, but is a wooden frame building covered with thin sheets of corrugated iron."

(2) "The court erred in refusing to grant plaintiffs a writ of mandatory injunction, requiring defendant to take down said iron-clad building, or to make the same conform to the Building Code of the city of Galveston, because it affirmatively appears from the court's findings of fact that said building was erected within the fire limits of said city, and was constructed of wood, with a wooden roof, and covered with thin sheets of corrugated iron; is not inclosed on all sides with walls constructed wholly of stone, brick, Portland cement, concrete, iron, or steel, or other hard, incombustible materials, being therefore in violation of said ordinances, and subjecting defendant to criminal prosecution for the erection and maintenance thereof, and being a nuisance within the meaning of the law, and should have been ordered abated by the court."

The trial court filed findings of fact and conclusions of law. No attack is made upon the former, but the latter are vigorously assailed. From the fact findings, this description of the building complained of is taken:

"The building is located about 6 or 9 feet west of plaintiffs' property, extending parallel with the west walls of plaintiffs' building, a distance of between 60 and 70 feet, being 30 feet wide and about 30 feet high from the ground, and about 25 feet from the floor of the building to the top of same, the building being built of wood and corrugated iron, being a one-story building with a floor about 6 feet above the ground, the floor being upheld and resting on wooden uprights 8x8 inches, about 6 feet long, and placed 6 or 8 feet apart; the roof being supported by 2x4 wooden uprights, about 2 to 3 feet apart, resting on the sills; the roof supports being built wholly of wood and covered on top with corrugated iron; the eaves of the roof extending over the wall on the sides next to plaintiffs' property about 4 feet, and being uncovered underneath; the walls of said building consist of wooden uprights and sills, covered with corrugated iron."

All the material averments by plaintiffs in error as to the ownership, location, values, and increased insurance upon their property and building, were found to be substantially true, as alleged.

The two sections of the Building Code around which this controversy in the main revolves, and which plaintiffs in error contend alone prescribe the kind of buildings that may be erected within the fire limits, except those especially named in succeeding sections, are here copied in full, omitting boundaries:

"Sec. 177. It shall not be lawful, *except when otherwise ordered by the board of commissioners* to erect, build, place, enlarge or repair any wooden building or structure, or any building or structure whatsoever, constructed of wood or with a wooden roof, or arrange, keep, locate or establish any lumber or wood yard, or place for the purpose of carrying on the business of lumber dealing, or for the storage of cord wood, except in quantities of less than twenty cords thereof, in this city within the following boundaries."

"Sec. 179. Every building hereafter erected or altered within the fire limits shall be inclosed on all sides with walls constructed wholly of stone, brick, Portland cement, concrete, iron or steel, or if approved by the building inspector, other hard incombustible material; except that buildings covered by the following sections of this part, may be permitted if in the judgment of the building inspector the public safety is not endangered thereby."

The sections referred to in the concluding sentence of 179, and following immediately in consecutive order after it in the Code, are sections 180 to 186, inclusive; of these, sections 180 to 183, inclusive, in effect, provide that, upon permits issued by the building inspector, and under certain other prescribed conditions not deemed necessary to recite, the following specified kinds of buildings may be erected within the fire limits, to wit: (1) Grain elevators and coal packets, or elevators as usually constructed; (2) buildings for fair and exhibition purposes, towers for observation purposes, and structures for similar uses; (3) temporary one-story frame buildings for the uses of builders; (4) exterior privies and wood or coal houses not exceeding 150 square feet in superficial area, and 8 feet in height, etc.

Sections 184 to 186, inclusive, prescribe in detail the kind and character of construction required of frame buildings generally, whether located within or without the fire limits, with especial reference to their height, the manner of construction of walls, studding, floor and ceiling joists, and their position with reference to the lot or property lines.

We think it clear that the building in question was not one of the kinds specially named in any of these sections following 179; if, therefore, they are to be construed as not permitting the erection within the fire limits of any other kind of buildings of frame, or wooden, or part such construction, than those particularly enumerated therein, then defendant in error was relegated alone to the

special power conferred upon the board of commissioners by the excepting clause in section 177 for any authority to erect the building he did; because, as already shown, the court found that the walls of this building consisted partly of wood, and not wholly of stone, iron, etc., as required by section 179.

If this be the net effect of the Building Code, considered in its entirety, and the majority of the court think it is, this member only holding a contrary view, hereinafter stated, then the only hope of plaintiffs in error for relief by injunction was in showing the excepting clause of section 177 alone invalid upon its face, and the balance of that section valid; and this for two reasons: (1) If the whole section should fall, that is, if there were no restriction at all left upon what would otherwise be a perfectly reasonable and lawful use by an owner of his own property, that is, putting a corrugated iron building upon it, no injunction would lie to prevent such use; (2) if the excepting clause could not be declared void without invalidating the section as a whole, the result just stated would obtain.

But, upon the other hand, if all relevant sections of the ordinance, when considered together, may be interpreted as authorizing the erection within the fire limits of frame, or part frame, buildings generally, and not those only specifically named in sections 180 to 183, inclusive, "if in the judgment of the building inspector, the public safety is not endangered thereby," as is last provided for in the quoted section 179, and the writer thinks such their proper construction, then defendant in error was not dependent for legal sanction of the erection of his building upon the exercise by the board of commissioners of the special power conferred, or attempted to be conferred, upon them in the italicized clause of section 177, and it would not be necessary to determine its validity; because the court found that he erected the particular kind of building he did, not only with the consent of this board, but also under a permit from the building inspector, and that the building was constructed under the direction and supervision of the inspector, and hence was directly authorized by section 179. Under the majority view of the meaning and effect of the Building Code, however, it becomes directly necessary to pass upon the validity of section 177 as it stands, and that question will now be considered.

Insisting that the excepting clause is absolutely void, and the remainder of section 177 valid and legal, plaintiffs in error further contend that this left the erection and maintenance of the building in direct violation of law, and a continuing nuisance, for the abatement of which the injunction asked would properly lie. And upon this one foundation only, the asserted right to injunction against the maintenance of that character of building in that place, that is, within the fire limits, is predicated; in other words, that the building was a nuisance because built partly of wood and partly of iron, and not wholly of stone, iron, or other incombustible material, as required by the only remaining valid parts of the Building Code; that is necessarily the position taken when boiled down, because there is neither allegation nor proof that the board of commissioners acted arbitrarily or discriminatingly in granting the permit to Heffron, nor that his use of the building was objectionable.

The particular objection lodged against the attacked section of the ordinance is, that it fails to prescribe a uniform rule or test, applicable to all alike who may come within its terms; but is an attempt by the board of commissioners to reserve to themselves the arbitrary prerogative of granting special privileges, in that they may, at their own unbridled discretion or whim, without conforming to any fixed requirements, grant to one the privilege of erecting other than an all stone or iron, etc., building within the fire limits, and at the same time, under exactly the same circumstances, refuse it to another similarly situated.

In support of this position, in addition to several opinions from the courts of other states, the main authorities cited are the case of Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, by the Supreme Court of the United States, and the able dissenting opinion of Chief Justice Davidson in Ex parte Broussard, 74 Tex. Cr. 333, 169 S. W. 660, by the Court of Criminal Appeals of Texas.

[1] After a very careful consideration of the question and of the authorities relied upon, we have concluded that the ordinance is not subject to the attack thus made upon it. One very distinctive, if not controlling, difference between the two opinions just mentioned and the case at bar is that in both of them the ordinances complained of were so treated and administered by those in official charge as that actual discrimination of a pronounced type resulted; in the Yick Wo Case, against the Chinese as a class, prohibiting them from operating laundries in the city of San Francisco, Cal., on equal terms with others of different races; and in the Broussard Case, against the relator as an individual, in denying to him the privilege of keeping more than six cattle within 300 feet of a private residence in the city of Beaumont, Tex., while at the same time permitting 23 others of his fellow citizens to do that very thing under precisely the same conditions. Both the opinions referred to show these facts, and, upon them as a basis, very properly, we think, held the ordinances as so construed and administered discriminatory and invalid.

However, we think a much more nearly direct determination of the question presented

in this case than was done in either the Yick Wo Case, or the dissenting opinion in the Broussard Case, supra, was made by the Supreme Court of the United States in the later case of Fischer v. St. Louis, 194 U. S. 361, 24 Sup. Ct. 673, 48 L. Ed. 1018. In that case the ordinance was:

"No dairy or cow stable shall hereafter be erected, built or established within the limits of this city without first having obtained permission so to do from the Municipal Assembly."

The court there had under consideration the bare question of the validity of the ordinance, considered aside from its actual operation and administration, no complaint having been made of any discrimination in its administration, just as is the situation in the case at bar. The validity of that ordinance was sustained by the court in an opinion which we have not found to have been since overruled.

Nor do we think, as is ably demonstrated in both the majority and minority opinions in Ex parte Broussard, that there is any conflict in doctrine between the Yick Wo and Fischer Cases; and especially would the doctrine of both be the same, we think, when applied to the undisputed facts here, where there was a total absence of any pretension of unfair or unlike treatment as between persons similarly situated.

[2] Another marked difference between those cases and this is that in each of them the complainant himself had been directly discriminated against, and hence actually victimized by the unequal operation and administration of the law, whereas here, as already stated, no discrimination against any one was even charged, nor was it alleged that any one had ever been refused a like permit to that granted Heffron, but the position of plaintiffs in error with reference to the matter was merely that they were the owners of adjoining property, and their fire hazard and rates of insurance therein had been greatly increased by the erection and maintenance of Heffron's building upon the lot next to theirs. We cannot hold that this one fact, under all the conditions and circumstances shown here, entitled them, by the method of the mandatory injunction asked, to require him after completion to tear down his building and put up another of entirely incombustible material; especially when, with full knowledge in advance of what he was going to do, and unhampered opportunity to both see and know what he was doing throughout his building process, they stood hard by and made no complaint of any sort until after his expense had been outlaid and his building completed, and then sought through the writ of injunction to have it razed.

Our conclusion that section 177 is not void upon its face obviates any necessity of determining the further contingent question suggested, as to whether a part of it could be held void without invalidating the whole. And it also logically results that, in our opinion, the trial court did not err in the following conclusion of law:

"That defendant, in the construction of said building, acted in accordance with the power and authority granted him by the board of commissioners of the city of Galveston, and under proper and valid building permit issued by the building inspector of the city of Galveston, all in accordance with the provisions of the said Building Code of said city."

Accordingly, the erection and maintenance of the building being a lawful use of his own property by defendant in error, he could neither be deprived of such use by injunction, nor made to respond in damages by reason of its exercise.

From these considerations, it necessarily follows that all assignments must be overruled, and the judgment of the trial court affirmed, and it has been so ordered.

Affirmed.