HOWELL v. CITY OF SWEETWATER.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 15, 1913. Rehearing Denied Dec. 13, 1913.)

1. APPEAL AND ERROR (§ 518*)—RECORD—ANSWER — PLEADING NOT CALLED TO ATTENTION OF TRIAL COURT.

Where an appeal was taken from an order granting a preliminary injunction, and defendant's answer was not filed until 10 days after the writ was granted, or shown ever to have been called to the court's attention, and no motion was made to vacate the writ, the answer was not properly in the record on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2342–2355; Dec. Dig. § 518.*]

2. MUNICIPAL CORPORATIONS (§ 623*) — ABATEMENT OF NUISANCES — DANGEROUS BUILDINGS—RIGHTS OF CITIES.

Rev. Civ. St. 1911, art. 844, authorizes cities to abate nuisances, and to define what shall be nuisances. Article 856 provides that whenever in the opinion of the city council a building is liable to fall and endanger persons or property, the council may order the owner to remove it; that in addition the council shall have power to remove the same at the expense of the city and assess the expense to the landowner. Article 965 also authorizes the removal of wooden buildings for prevention of fire, etc. *Held*, that where an old building in a city was so dilapidated that it was likely to fall and was composed of such combustible material as to render it dangerous to the public by reason of the probability of its burning and of its proximity to other buildings, the city could order its removal by resolution of the council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1371–1374, 1383, 1384; Dec. Dig. § 623.*]

3. MUNICIPAL CORPORATIONS (§ 623*)—ABATEMENT OF NUISANCE—EQUITY JURISDICTION.

Where the owner of a dilapidated wooden building was ordered by resolution of the city council to remove it, but refused to do so, and was proceeding to remodel and improve it for a stable, which rendered it more dangerous and more liable to take fire, within the city fire limits, the city was authorized to invoke the aid of equity to restrain the contemplated improvements and to require the removal of the building as a nuisance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1371–1374, 1383, 1384; Dec. Dig. § 623.*]

Appeal from District Court, Nolan County; W. W. Beall, Judge.

Suit by City of Sweetwater against G. B. Howell. Judgment for complainant, and defendant appeals. Affirmed.

Ed. J. Hamner, of Sweetwater, for appellant. Beall & Spencer and A. W. Christian, all of Sweetwater, for appellee.

DUNKLIN, J. G. B. Howell has appealed from an order made by the judge of the district court in chambers, granting a temporary writ of injunction, which restrained the defendant from constructing certain improvements of a building owned by him, and also from using the same as a place to conduct a livery business.

[1] The suit was instituted by the City of Sweetwater, and the building is situated in the City of Sweetwater. The writ was granted upon an ex parte hearing of the plaintiff's petition, which was duly verified by the mayor of the city. Some 10 days subsequent to the issuance of the writ of injunction the defendant filed an answer to the petition, which appears in the record of this court. No proceeding was instituted by the defendant in the district court for a vacation of the writ, and it does not appear that the answer filed was ever brought to the attention of the judge who granted the writ. Nor has appellant filed any brief in this court. The answer has no proper place in the record and cannot be considered, as we must determine the merits of the appeal upon the allegations of the petition alone; hence appellee's motion to strike the answer from the record is sustained. Wynn v. Edmonson Land & Cattle Co., 150 S. W. 310.

According to the allegations in the petition the building in question is a wooden one known as the old opera house, which was built several years ago, and is constructed of very inflammable material. In recent years it has been used for no other purpose than an auditorium, and that, too, infrequently, and the flooring and timbers supporting the same, which constituted the most substantial part of the building, have been removed, thus rendering it unstable and liable to fall down and injure persons in its immediate vicinity. The post office building is situated on the adjoining lot, and on the opposite side of the street there are several buildings, one of them being the First Presbyterian Church, and the others stores of merchandise and dwellings.

The city is incorporated under the general laws of the state, and has by ordinance duly passed established certain fire limits within which wooden buildings are not allowed to be constructed or repaired, and the building in question is situated within those limits. On March 6, 1913, a short time after the building was found to be on fire and the fire extinguished, the city council, by res-

---

olution duly passed, ordered Barrow & Sons, who then owned the building, to remove the same. A copy of the resolution is made a part of the petition, but the reason given in this resolution for the removal of the building is that the building is "liable to fall down and endanger persons or property." At the date the ordinance was passed defendant was the owner of the lot, but not the owner of the house; later he bought the house, and now owns it, as well as the lot upon which it is situated. By the terms of the resolution last referred to, Barrow & Sons were ordered to move the building within 10 days after service upon them of a copy of the resolution, with the further notice that in the event the order was not obeyed, the building would be removed at the expense of the city, which expense would thereafter be taxed against the owner of the building, in accordance with the provisions of the ordinance relating to unsafe and dangerous buildings, and which ordinance further provides that a failure of such owner to remove the house after notice given would be deemed a misdemeanor, punishable by fine; Barrow & Sons having failed to obey the order, and the defendant having purchased the building, tore up and removed the flooring and sills, leaving the building vacant from roof to ground with no support other than the outside walls upon which rests a large, cumbersome, and dangerous roof of old and combustible material. This work by the defendant was, preparatory to his purpose, publicly announced of using the building as a livery stable, wherein would be kept horses, vehicles, and stock feed, thus increasing the dangers of a destruction of the building by fire. Upon information of such purpose on the part of the defendant, the duly authorized representatives of the city at once gave notice to the defendant that the building had been condemned by the city, and he would not be permitted to operate a livery stable therein. Thereafter the city council passed a resolution requiring the defendant to desist from so occupying the building, and ordering him to take down and remove the building within 10 days after service upon him of a copy of the resolution, and further notifying him that in the event of his failure to obey said order, then the city council would remove the building and assess the expense of such removal against the lot upon which the building was located, in accordance with the provisions of its ordinance relating to unsafe and dangerous buildings, and, according to which ordinance, defendant's failure to obey the order would be a misdemeanor punishable by fine. This resolution was dated July 5, 1913, and a copy of it is made a part of the petition. The reason assigned in the resolution for the order to Howell to remove the building was that the building "is liable to fall down and endanger persons or property." A copy of the resolution was immediately served upon the defendant, at which time the defendant stated that the order would not be obeyed, that the building would remain, and that he would proceed to occupy it and use it as a livery stable, as he had previously planned.

According to further allegations in the petition the city council of plaintiff has, by ordinances, declared buildings likely to cause fire to be nuisances, and has by resolution condemned the defendant's building as such nuisance. The petition contains this further allegation: "Plaintiff shows to the court that said old building has at all times past been exceedingly dangerous as a fire trap and firebrand, endangering not only the property in the immediate vicinity thereof, but the city at large, because of its dimensions, the very great amount of combustible material in it would make and constitute a fire and conflagration of such magnitude, intensity, and heat as under ordinary circumstances, and especially should the usual and ordinary winds of this country be blowing at such time that a fire might exist therein, to endanger the entire town, especially that portion thereof situated windward therefrom; that to place and operate a livery stable in said old building with the usual and ordinary forage, feed, implements, equipments, and supplies of a livery stable, would increase such danger possibly fourfold to the danger now existing of said vacant or unoccupied building." Notwithstanding due notice to the defendant of the proceedings so taken by plaintiff condemning said building and ordering the same removed, the defendant at night removed from his barn, heretofore occupied by him as a livery stable, some of his horses and vehicles into the building in question, and has publicly announced his purpose to disobey the order of the city council, and to improve and repair the building as he saw fit and to operate a livery business therein, and that nothing would deter him from this purpose except that he be placed in jail and kept there.

By another paragraph in the petition it is alleged that the use of the building as a livery stable would create a public nuisance by reason of offensive odors and gases arising from the rubbish accumulating therein, attracting flies, and becoming offensive to the citizens of the town.

It was further alleged in the petition that at the time the suit was filed the plaintiff could not legally remove the building by reason of the fact that the 10 days' notice given to the defendant to remove the same, in accordance with the resolution aforesaid and ordinances adopted by the city, had not expired, and that unless defendant was restrained from so doing, he would complete his proposed repairs of the building.

[2] By Revised Civil Statutes 1911, the city council of a city incorporated under the general laws are invested with the following powers:

"To abate and remove nuisances and to·

punish the authors thereof by penalties, fine and imprisonment, and to define and declare what shall be nuisances and authorize and direct the summary abatement thereof." See article 844.

"To abate all nuisances which may injure or affect the public health or comfort in any manner they may deem expedient." See article 845.

"Whenever, in the opinion of the city council, any building, fence, shed, awning or any erection of any kind or any part thereof is liable to fall down and endanger persons or property, they may order any owner or agent of the same, or any owner or occupant of the premises on which such building, shed, awning, or other erection stands or to which it is attached, to take down and remove the same, or any part thereof, within such time as they may direct; and to punish by fine and imprisonment, or either, any neglect, failure or refusal to comply therewith. The city council shall, in addition, have the power to remove the same at the expense of the city, on account of the owner of the property or premises, and assess the expenses on the land on which it stood or to which it was attached, and shall, by ordinance, provide for such assessment, the mode and manner of giving notice and the means of recovering any such expenses." See article 856.

"The city council, for the purpose of guarding against the calamities of fire, may *prohibit the erection, building, placing, moving* or repairing of wooden buildings within such limits within said city as they may designate and prescribe; and may within said limits prohibit the moving or putting up of any wooden building from without said limits, and may also prohibit the removal of any wooden building from one place to another within said limits, and may direct, require and prescribe that all buildings within the limits so designated and prescribed, as aforesaid, shall be made or constructed of fireproof materials, and to prohibit the rebuilding or repairing of wooden buildings within the fire limits when the same shall have been damaged to the extent of fifty per cent. of the value thereof, and may prescribe the manner of ascertaining such damage; may declare all the dilapidated buildings to be nuisances and direct the same to be repaired, removed or abated in such manner as they shall prescribe and direct; to declare all wooden buildings in the fire limits which they deem dangerous to contiguous buildings, or in causing or promoting fires, to be nuisances, and require and cause the same to be removed in such manner as they shall prescribe." See article 965.

We are of the opinion that the instability of the building rendering it likely to fall and thereby endanger human life, and the fact that it is a wooden building of such combustible material as to render it dangerous to the public by reason of the probability of its burning and of its proximity to other buildings, together with the further fact that the location of the building was within the first limits which had been duly established by the city council by ordinance, furnished a sufficient predicate under the statutes for the order passed by the council condemning the building and ordering its removal.

[3] We are of opinion, further, that it was proper for the plaintiff to invoke the aid of a court of equity by injunction to enforce such right. See City of Belton v. Hotel Co., 33 S. W. 297; City of Llano v. Llano County, 5 Tex. Civ. App. 132, 23 S. W. 108; 28 Cyc. 259.

The foregoing conclusion renders it unnecessary to determine the sufficiency, for the relief sought, of the further allegations that the use of the property for purposes of a livery stable would necessarily create a public nuisance by reason of the congregation of flies around the premises and the odors which would arise, both of which results would inevitably follow from such use of the premises.

For the foregoing reasons, the judgment is affirmed.