For the purpose of clearly presenting the nature of the suit and the issues involved, we make the following statement:
The charter of the city of Galveston, passed by the Legislature in 1905, among other powers confers upon the board of commissioners of said city the following:
"To regulate the building, maintenance and use of party walls, partition fences, parapet and fire walls, smoke flues, hot air flues, smoke-stacks, fire places of all sorts and all appliances therewith connected; to require, provide, fix and regulate the inspection, safe construction, repair and maintenance of all public or private buildings; to regulate, restrain or prohibit the constructing, placing, moving or repairing of wooden or frame buildings, or structures of any kind within the limits of said city or any *Page 129 
part thereof, and to regulate, define and describe building materials that may or may not be used in the city or any part thereof; to require or provide for the taking down and removal, by the city or by the owner, and at the expense of the owner, of buildings, walls or structures of any kind that are or may become dangerous, and generally to make and enforce any and all regulations concerning buildings and building materials requisite, necessary or proper to protect said city or any part thereof from fire and to protect the health and safety of the inhabitants; and to declare all wooden buildings in the fire limits which they deem dangerous to contiguous buildings, or in causing or promoting fires, to be nuisances, and require or cause the same to be removed in such manner and at the expense of the owner, and generally to establish such regulations for the prevention and extinguishment of fires as said board of commissioners may deem expedient."
Section 177 of the Ordinances of said city is as follows:
"It shall not be lawful, except when otherwise ordered by the board of commissioners, to erect, build, place, enlarge or repair any wooden building or structure, or any building or structure whatsoever, constructed of wood or with a wooden roof, or arrange, keep, locate or establish any lumber or wood yard, or place for the purpose of carrying on the business of lumber dealing, or for the storage of cordwood, except in quantities of less than twenty cords thereof, in this city, within the following boundaries."
Section 178, following section 177, prescribes and fixes the boundaries of the fire limits of the city of Galveston. Plaintiffs' property involved in this suit is within such boundaries. Article 241 of the Ordinances of said city reads as follows:
"When any building, awning, shed or other structure of any kind shall, from age, neglect, or other cause, become dilapidated, the same is hereby declared a nuisance, and the mayor president, on his own motion, may, and upon complaint being made to him in writing by ten or more citizens that any such building, awning, shed or other structure has become dilapidated and a nuisance, shall cause the same to be inspected by the health physician, the city engineer and the chief of the fire department, as a committee of inspectors, and if said inspectors, or a majority thereof, shall report the same to be dilapidated and a nuisance, setting forth the facts upon which they base their report, the mayor president shall lay said report before the board of commissioners for their consideration and action, and said board shall give five days' notice to the owner or agent of said dilapidated building, awning or shed or other structure, * * * to appear before said board, stating why said dilapidated building, awning, shed or other structure, shall not be declared a nuisance and abated and removed, and if the board shall adopt the report of the inspectors by a majority of two-thirds of the board, the mayor president thereupon shall, in case said building, awning, shed or other structure, is within the fire limits, cause the same to be pulled down and removed as he may deem best, giving reasonable notice to the owner or agent to remove or pull down the same so that the nuisance may be abated. * * *"
On the 29th day of October, 1914, a committee, composed of the health officer, chief of fire department and city engineer, which had been previously appointed by the board of commissioners of the city of Galveston, after an examination and inspection of the building of appellants involved in this suit, made a written report to the board of commissioners that said building in its then condition was an unsanitary nuisance, a dangerous fire hazard, and a nuisance to the public; whereupon the board of commissioners made and entered an order directing that the owners of said building be notified to appear before said board of commissioners on November 5, 1914, to show cause, if any they had, why said building should not be condemned as a nuisance and removed beyond the fire limits of said city. On November 12, 1914, Mrs. Maggie Burke and W. II. Crossman, two of the owners of said building, for themselves and the other owners, appeared before said board of commissioners and asked for an extension of time in which to remove said building. Upon such request further action was deferred indefinitely. Two years thereafter, to wit, on December 14, 1916, the board of commissioners resumed consideration of the matter and again caused proper notice to be served upon the owners of said building, directing them to appear before said board on the 21st day of December, 1916, to show cause, if any they had, why said building should not be declared a nuisance and removed. On the 21st day of December, 1916, the owners of said building filed with said board of commissioners their reply to said notice in writing, in which they said:
"That the said wooden building was constructed in about the year 1881, and was located upon said premises prior to the enactment of the revised ordinance of the city of Galveston relating to the erection and repairing of wooden buildings known as the Building Code, adopted October 29, 1914, and the ordinance amendatory thereof and supplemental thereto, and prior to the enactment of any ordinance of said city fixing fire limits therein. The building was damaged by the hurricane of August 16, 1915, and your petitioners desire to repair said building; the said improvements are of the value of $3,000 and upwards, and the undersigned hereby make application pursuant to section 177 of the ordinance known as the Building Code as aforesaid, such repairs to be as follows, to wit: (a) To replace and repair the rear wall of said building, which was damaged by the storm of August, 1915; (b) to repair the flashing and gutters; (c) to repair and replace the roof; (d) to repair the awning roof; (e) to place new sills under the west, north, and south sides of the building and through the center; (f) to splice on the rafters on the west side which were cut off by the contractor repairing and building the brick wall along the west side of the premises immediately adjacent on the east; (g) to repair and replace the sheeting wherever necessary; (h) to repair the skylights. All of the above-mentioned repairs to cost not exceeding $1,000 and to be made of like material used ordinarily in the construction of said building and improvements, and which will place the building in good condition.
"In reply to the communication received from Mr. John D. Kelley, city secretary, dated December 15, 1910, which reads as follows: `Mr. W. H. Crossman, Galveston, Texas — Dear Sir: At a meeting of the board of city commissioners held December 14, 1916, I was instructed to notify you to appear before the board on Thursday, December 21, 1916, at the city hall at 5:30 p. m. to show cause, if any you can, why the buildings situated at 2315-17 Post-office street, heretofore condemned as a nuisance and dangerous, should not be taken down and removed. Yours respectfully, John D. Kelley, City Secretary' — we have to say: We deny that the buildings mentioned are a nuisance or dangerous to either public health or safety, and deny and dispute your right to order them taken down or removed, because *Page 130 
said improvements are valuable property to your petitioners and are out of repair on account of the storm aforesaid; to take down and remove the buildings would entail a loss to the undersigned of $3,000 or more, and the cost of repairs desired will be only one-third of the value of the buildings and improvements, and we respectfully ask that you permit us to preserve our property; to refuse the repairs asked for would amount to taking our property without due process of law, which we claim is illegal and not within your power or right."
On said 21st day of December, 1916, said board of commissioners, after filing the reply to the owners above mentioned, proceeded to a consideration of the matter, heard the statements of the city engineer, chief of fire department, and the building inspector of said city, who had examined and inspected said building as to the condition of the same, as well as the report of said former committee concerning the condition thereof in October, 1914, and after said hearing found, determined, and declared that said building was in a dilapidated condition on account of age, use, and lack of attention; that in its condition it was unsanitary and dangerous to persons living and going therein; that it constituted a dangerous fire risk and was a source of danger to adjoining buildings; and that by reason of its said condition was a nuisance. Upon such findings said board of commissioners at said meeting refused to grant the application of the owners to repair said building, and by proper order entered of record ordered that the same be taken down and removed as a nuisance. After said hearing and entry of said order, appellants R. A. Crossman, W. H. Crossman, Margaret Burke, Ethel Durling and husband, Albert Durling, and Robert Kennedy brought this suit against appellees Lewis Fisher, mayor president, and A. P. Norman, George Sealy, M. E. Shay, and H. O. Sappington, commissioners, constituting the board of commissioners of the city of Galveston and the city of Galveston, praying for a writ of injunction to restrain appellees, their agents, attorneys, servants, and employés from in any manner demolishing or interfering with their said building, and for a writ of mandamus to compel appellees to grant their said application to repair said building.
Among other things, appellants alleged that they are the owners of the building in question; that the same was erected on lots owned by them in about the year 1880; that said building was when it was erected of about the value of $5,000; that appellees as such board of commissioners of the city of Galveston, pretending to act under authority conferred upon them by the charter and city ordinances of said city, were threatening to tear down and remove said building, and were refusing to grant appellants leave to repair the same to their great loss and irreparable damage. They further alleged: That their said building was erected prior to the adoption of the present, or any other ordinance of said city prescribing and fixing fire limits within said city. That the ordinances of said city in so far as they were intended to apply to appellants' building were and are in violation of the Fifth Amendment to the Constitution of the United States, which provides that "No person shall be * * * deprived of property without due process of law; nor shall private property be taken for public use, without just compensation," and that said ordinance is also in violation of the Fourteenth Amendment to said Constitution, which provides: "Nor shall any state deprive any person * * * of property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." That said ordinance is illegal, unreasonable, discriminatory, and void, in that it is prohibitive, and delegates to the board of commissioners of the city of Galveston the power to arbitrarily grant or refuse permits for the repair of wooden buildings, and does not lay down any rule of proportion or otherwise by which the plaintiffs and others can determine what amount of injury, or what other circumstances will preclude repairs and which will enable persons affected by it to know their rights and liabilities, or any rule of limitation as to the power of said board of commissioners in respect thereto. They alleged that said building was out of repair and that they had made written application to said commissioners for leave to repair the same, and that such application had been wantonly, unreasonably, and arbitrarily refused, and that such refusal was an illegal, discriminatory, and oppressive exercise of the power conferred on said board of commissioners by said city charter and ordinances.
Appellees Lewis Fisher and others answered by general demurrer, general denial; admitted that they constituted the board of commissioners of the city of Galveston; specially pleaded their authority to do and perform the acts complained of by appellants under and by virtue of the charter and ordinances of the city of Galveston, hereinbefore mentioned. They also specially pleaded the various proceedings of said board of commissioners, hereinbefore mentioned, with reference to appellants' said building. They further answered as follows:
"Said defendants, and each of them, say that the premises described in said petition are located within the fire limits of the city of Galveston, and are frame buildings, and that said buildings are a nuisance and a fire hazard and dangerous to the citizens and property in the city of Galveston, and that in ordering said building to be removed and said nuisance abated said board of commissioners at all times acted within their authority and in accordance with the charter and ordinances of the city of Galveston and in exercise of their duty as members of the board of commissioners of the city of Galveston, a d in so doing were discharging a duty and exercising a discretion imposed upon them by virtue of their said office."
Appellants by supplemental petition denied that their building was or is a nuisance. *Page 131 
Upon trial of the cause before a jury the trial court, after hearing the pleadings read and the evidence adduced, instructed the jury to return a verdict in favor of appellees. The jury having returned such verdict, the court rendered judgment refusing to grant either the injunction or writ of mandamus prayed for by appellants. From this judgment appellants have appealed.
By assignments 1, 2, 3, and 4, grouped as first assignment, appellants insist that the trial court erred in instructing a verdict for appellees and in refusing appellants' application for injunction, first, because the proceedings of the board of commissioners condemning their building and ordering its removal were illegal, inoperative, and void, and not binding upon them; second, because the power conferred by the city charter and ordinances upon said board and the proceedings of said board thereunder are void and inoperative unless the building is in fact a nuisance; and, third, because the pleadings and the evidence raised an issue of fact as to whether said building constituted a nuisance, and therefore it was the duty of the court to submit such issue to the jury.
We understand the contentions of appellants to be that while it is true that when buildings or structures are erected within the fire limits of the city of Galveston of such material and in such manner as is forbidden by the ordinances of such city, after such fire limits have been established, such buildings or structures are nuisances per se, and may be declared such and removed from within such limits by the proper authorities; but if such buildings or structures are erected prior to the establishing of such fire limits they are not nuisances per se, and that in the latter case the board of commissioners have no power, either under the express grant of power conferred by the charter of the city, to wit:
"To require or provide for the taking down and removal, by the city or by the owner, * * * and generally to make and enforce any and all regulations concerning buildings * * * requisite, necessary or proper to protect said city or any part thereof from fire, and to protect the health and safety of the inhabitants; and to declare all wooden buildings in the fire limits which they deem dangerous to contiguous buildings, or in causing or promoting fires, to be nuisances, and require or cause the same to be removed, * * * and generally to establish such regulations for the prevention * * * of fires as said board of commissioners may deem expedient"
— or by virtue of the regulation provided in section 241 of the City Ordinances to determine and declare such building a nuisance, even after a full and fair hearing of the facts with reference to its condition; that the courts alone have the power to determine whether in fact such building would constitute a nuisance.
We think the board of commissioners were clothed with the power to adopt section 241 of the City Ordinances, and that the action of the board taken under said ordinance with reference to the removal of appellants' building was a proper exercise of the powers conferred upon them by such ordinances. The mere fact that by section 241 of the Ordinances the board of commissioners declared, among other provisions thereof, that all buildings which shall from age, neglect, or other cause become dilapidated shall be and are declared a nuisance, does not invalidate the further provision prescribing the manner of procedure for a determination by the board as to whether or not such building is in fact a nuisance. But if we are mistaken in such conclusion, still we think the board had the power to take the action it did with reference to said building, under the express grant of powers conferred by the Legislature through that section of the city charter hereinbefore set out. Article 844, Vernon's Sayles' Civil Statutes 1914; Howell v. City of Sweetwater, 161 S.W. 948; Xydias v. City of Houston, 185 S.W. 418, 419; Ex parte Broussard, 74 Tex.Cr.R. 333, 169 S.W. 660, L.R.A. 1918B, 1091, Ann.Cas. 1917E, 919; City of Austin v. Cemetery Ass'n, 87 Tex. 338,28 S.W. 528, 47 Am.St.Rep. 114.
We do not think that the provisions of the charter of the city of Galveston quoted herein, nor either of the ordinances referred to, are obnoxious to any of the provisions of either the Constitution of the United States or of the state of Texas invoked by appellants. The authority of the Legislature, in the exercise of its powers to confer upon municipal corporations by special charter the exercise of police powers necessary for the protection of public health, safety, and morals, and the security of the great body of its citizens in the safe and peaceable enjoyment of their property rights, to make unlawful the doing of any act by individual citizens which will endanger the public welfare, cannot be doubted. The provisions of the city charter, which confer upon the city of Galveston the power to establish fire limits within said city and to regulate the erection of buildings and to remove the same, after proper proceedings in the mode and manner provided by the charter or by ordinance adopted under its authority, cannot be held to authorize an unreasonable taking of property for public use. Nor can such ordinances be held to be discriminatory per se against the individual citizen. The prohibition against the erection of wooden buildings within the fire limits of an incorporated city, or the removal of such buildings by the proper authorities when found to be nuisances in the manner provided by law, is no more an unreasonable taking of private property for public uses or a discrimination against individual citizens in the purview of the Constitution of either the United States or of the state of Texas, than is the seizure and destruction of diseased animals for the *Page 132 
protection of the stock Industry, nor the exercise of the police powers in abating suck things as are reasonably calculated to spread contagious human diseases or Injuriously affect the morals of the citizens. The rights of the state, as well as municipal corporations, when empowered by the Legislature to adopt such police regulations, has been uniformly recognized and upheld by the courts.
In the case of Stockwell v. State, 203 S.W. 109, Chief Justice Pleasants, in an opinion not yet published, speaking for this court with reference to the law authorizing and empowering the commissioner of agriculture of this state to destroy all trees and plants found to be afflicted and infected with citrous canker, said:
"We think it also clear that the method provided by the statute for determining the necessity for the destruction of the plants refutes appellant's contention that the statute authorizes the taking of private property without due process of law. The provision of the Constitution which prohibits the Legislature from depriving any citizen of his property except by due course of the law of the land has a different meaning, when applied to controversies between citizens, to that given it when property is taken or destroyed by the government for public use or the public welfare; and when the Legislature, in the exercise of its police powers, interferes with the use and enjoyment of private property, we have only to see that the interference is justified by established rules applicable to the special case. Cooley's Constitutional Limitations, § 435. It would be a strained construction of our Constitution to hold that the exercise of police power by the state cannot be valid without a judicial trial for ascertaining in each case the necessity of the authorized action. The method provided in this statute for the condemnation and destruction of diseased plants does not have the elements of a judicial trial, but the proceedings are appropriate and adapted to the nature of the case and must be held valid. Every one's right to the use and enjoyment of property is necessarily limited in organized society by considerations of public welfare and safety, and the Legislature, in the exercise of the police power of the state, can enforce this limitation by any reasonable method appropriate to its accomplishment, and the citizen must submit. To hold otherwise would deny society the right to protect itself by lawful means. Dent v. West Virginia, 129 U.S. 114 [9 Sup.Ct. 231, 32 L.Ed. 623]; Chambers County Judge v. Gilbert [17 Tex. Civ. App. 106], 42 S.W. 630; Livingston v. Ellis County [30 Tex. Civ. App. 19], 68 S.W. 723; City of New Orleans v. Charouleau, 121 La. 890 [46 So. 911, 18 L.R.A. (N.S.) 308,126 Am.St.Rep. 332, 15 Ann.Cas. 46]. The contention that the destruction of appellant's property, under the provisions of this statute, is a violation of the constitutional inhibition against the taking of private property for public use without compensation to the owner, is one that seems to us has much force, but it has been decided by our courts that this provision of the Constitution only applies to the taking of property by the state under its powers of eminent domain, and is not a limitation upon the police power. Railway Co. v. City of Dallas, 98 Tex. 396 [84 S.W. 648, 70 L.R.A. 850]; Livingston v. Ellis County [30 Tex. Civ. App. 19],68 S.W. 723."
We think the language here used is specially applicable to the contention of appellants in this case that the ordinances in question, in so far as they were intended to apply to their building, were and are in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States.
In the case of Fischer v. St. Louis, 194 U.S. 361, 24 Sup.Ct. 673,48 L.Ed. 1018, the court said:
"As the dispensing power must be vested in some one, it is not easy to see why it may not properly be delegated to the municipal assembly which enacted the ordinance. Of course, cases may be imagined where the power to issue (licenses) may be abused and permission accorded to social or political favorites and denied to others, who for reasons totally disconnected with the merits of the case are distasteful to the licensing power."
That the board of commissioners may act arbitrarily under the authority granted by the city charter or the ordinance does not render the ordinance void. The presumption of law is that the board of commissioners will act within the spirit and intent of the law; that is, in such manner as they deem necessary for the public good and welfare of the city. If they do act arbitrarily in the premises, this would not render the ordinance void, but such action would be revised and controlled by the proper tribunal.
We now come to consider what we think the only serious and doubtful question presented by this appeal, to wit: Did the court err in instructing a verdict for the appellees? Was there any evidence to support a finding that the board of commissioners acted arbitrarily in ordering the removal of appellants' building? Were such acts discriminatory against appellants? After a very careful examination of the entire statement of facts we find no evidence which would Justify a finding that the board of commissioners acted arbitrarily in any of their proceedings relative to appellants' building, or that in such proceedings they discriminated against appellants. But, to the contrary, we think the uncontradicted evidence shows that the sills of a considerable portion of the building were rotten and gone; that several of the upright studding had rotted off at the lower end; that the roof had sagged at some places; that two of the walls were gone; that some of the weatherboarding on one of the other walls had fallen off; that about 50 or 60 feet of the roof on one side was being held up by temporary upright timbers 2 by 4 inches in size; and that the building as a whole was in a very dilapidated condition; in such condition that almost any one would conclude that it was liable to collapse and fall at any time, and probably injure those going into or about the same; and that it was a dangerous fire risk. Having reached the conclusions as hereinbefore expressed, we further conclude that the trial court did not err in instructing a verdict for appellees and in entering judgment accordingly. We therefore overrule the first group of assignments.
By what is designated in appellants' *Page 133 
brief as the fourth assignment of error, but which in fact appears second in their brief, It is insisted that the trial court refused to permit the witness John D. Kelley to testify that the board of commissioners had discriminated against appellants in their refusal to grant appellants permission to repair their said building, in that it had theretofore and prior to the application made by appellants to repair their said building granted to other persons permission to repair wooden buildings situated within the fire limits of said city of Galveston which were similarly situated and in similar condition as was appellants' building. We overrule the assignment. The bill of exceptions approved by the trial judge, upon which the assignment must rely for its support, does not show that it was expected of the witness that he would testify that the buildings inquired about were in the same dilapidated and dangerous condition as was the building of appellants, but only that he would have testified, if permitted to do so, that such buildings were situated within the fire limits of the city of Galveston as was the building of appellants. So far as the bill of exception discloses, appellants were attempting to show that in some instances the board of commissioners granted the owners of certain buildings situated within the fire limits of Galveston permission to make repairs without showing or attempting to show their condition otherwise than that they were constructed of wooden material, as proof that said board had discriminated against them in refusing to grant them a permit to repair their building, which was shown by the evidence to have been a menace to the public welfare. The mere fact that the board of commissioners, in the exercise of the discretion given them by the city ordinances, granted permission for repairs upon some wooden buildings within the fire limits, without showing the circumstances and conditions under which they then acted, is no proof that they discriminated against appellants by refusing their said application. It is not shown by the bill of exception or otherwise whether permits sought to be shown by the witness were granted during the administration of the board of commissioners who refused appellants' application, or by some board or boards long prior to the coming into office of the first-mentioned board. We do not feel that we would be justified in sustaining the assignment under the showing made.
By the fifth and sixth assignments it is insisted that the court erred in admitting in evidence the record of the proceedings of the board of commissioners relative to the inspection of appellants' building, notices issued and services had upon the owners of said building, the nature of the hearing relative to the question of whether or not said building was or was not a nuisance, and the conclusions of the court at such hearing, because the question as to whether appellants' building was or was not a nuisance was one which could be determined by the courts only; that the commissioners had no power to determine such question, and therefore any action taken by the board was void and the records of the proceedings immaterial to any issue in the case. We overrule these assignments. We have already made it clear from what we have said under the first group of assignments that we think the board of commissioners had authority to take the action it did, with reference to appellants' building, under the powers conferred by the city charter and city ordinances. The evidence, the admission of which is complained of, was both pertinent and material upon the question as to whether or not the action taken by the board was arbitrary as alleged by appellants.
We have examined and considered the remaining two assignments and overrule both of them as being without merit.
The judgment of the trial court is affirmed.
Affirmed.